[No. B001242. Second Dist., Div. Five. May 8, 1984.]

BRUCE M. HENSEL et al., Plaintiffs and Respondents, v. BARRY COHEN et al., Defendants and Appellants.

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard and Lawrence N. Halperin for Defendants and Appellants.

Brodey & Price and Howard R. Price for Plaintiffs and Respondents.

OPINION

FEINERMAN, P. J.— May an attorney accept a personal injury case on a contingent fee basis, determine that it is not worth his time to pursue the matter, instruct his client to look elsewhere for legal assistance, but hedge his bet by claiming a part of the recovery if a settlement is made or a judgment obtained through the efforts of a subsequent attorney? We answer this question with a resounding "No." Thus, we affirm the trial court's holding that the firm of Cohen & Steinbrecher (Cohen) holds no lien against any recovery which Bruce Hensel (Hensel), their former client, may subsequently obtain in his pending personal injury case.

### FACTS

The accident which led to the present controversy occurred when Hensel, a pedestrian, was struck by a car driven by Jacqueline Karpen (Karpen) on February 24, 1981. Hensel retained the Cohen firm to represent him on his personal injury claim. Their agreement stated that the law firm would be

entitled to a fee of 33-1/3 percent of all gross amounts received by compromise or settlement prior to the filing of a lawsuit or demand for arbitration, and 40 percent of all gross amounts received thereafter, "whether by settlement, compromise, judgment, verdict or award." The attorneys were to be repaid all sums advanced by them as costs out of any recovery.[1] The fifth paragraph of the agreement stated: "Attorneys shall have a lien upon said cause of action, settlement, judgment, verdict or award obtained and the proceeds of any recovery thereon for their attorneys' fees at the rate of One Hundred and Twenty-Five Dollars ($125.00) per hour and for any costs and monies expended which they may have advanced in prosecuting client's claim." The paragraph ended with the following sentence written in bold face type: "IN THE EVENT THERE IS NO RECOVERY, ATTORNEYS SHALL RECEIVE NO COMPENSATION FOR THEIR SERVICES."

Cohen opened a file for Hensel, collected his medical bills and paid them, obtained the police report, and informed 20th Century Insurance Company (20th Century), Karpen's insurance carrier, of Hensel's claim against Karpen. 20th Century replied by letter of August 24, 1981, that Karpen, in their opinion, bore no liability for the accident, and therefore the insurance company would decline Hensel's claim. The law firm then sent its investigator, Chick Canzoneri, to "canvas the stores and the construction workers" in the vicinity of the accident in an attempt to obtain witnesses. None were to be found. Temporarily undaunted, the firm filed suit against Karpen, hoping to "get a different adjuster, a different supervisor, somebody in litigation instead of a claims unit." In the trial of this action, Steinbrecher testified that "once it goes into litigation before they answer, they [20th Century] may be willing to make an offer before they hire counsel or spend money."

No such offer was forthcoming from the insurance company. Barry Cohen, an associate of the firm, was then directed to draft a letter to Hensel informing him that Cohen would be "closing our file on your case and we will do no further work whatsoever." Hensel was further advised in this letter, dated November 25, 1981, that he could choose from one of three alternative courses: "You can obtain the services of another attorney, in which case we will be happy to forward the contents of your file to him. You can take over the handling of this case on your own, however, in light of the nature of your case, we advise against this. Your third alternative is to have your case dismissed, in which case you would never receive any compensation whatsoever as a result of this injury." Hensel was further advised that a response to Karpen was due by December 17, and he had best make his decision within 10 days.

---

[1] Both parties agree that Cohen & Steinbrecher are entitled to reimbursement of their costs if a recovery is eventually obtained by Hensel.

Confronted by the knowledge that his legal representative would do "no further work whatsoever" on his behalf, Hensel faced three choices—dismiss the case and abandon all hope of recovery, disregard his attorney's final counsel and represent himself, or find an attorney with a more optimistic attitude toward the success of the case. Not surprisingly, Hensel engaged the firm of Brodey & Price (Brodey) to represent his interests, and an amicable substitution of attorneys was executed by all parties. Amicability ceased, however, when Brodey received Hensel's file accompanied by a letter, dated December 23, 1981, signed by Barry Cohen, informing them that the Cohen firm possessed "a lien upon Mr. Hensel's Cause of Action, settlement, judgment, verdict or award obtained and the proceeds of any recovery thereon for our attorneys [*sic*] fees at the rate of $125.00 per hour and for any costs and monies expended which we may have advanced in prosecuting Mr. Hensel's claim."

Hensel and Brodey denied the existence of any valid lien for an amount in excess of costs of suit. When no agreement was reached, Hensel filed this suit for declaratory relief, seeking to establish that Barry Cohen, individually, and the firm of Cohen & Steinbrecher had no right to assert their lien upon any settlement or judgment received by Hensel and that any such lien was waived once the attorneys abandoned their representation of Hensel.

At trial, the Cohen firm maintained their right to the lien on two theories. First, they claimed they were entitled to the lien described in the retainer agreement, $125 per hour. They contended they had expended 25.8 hours upon Hensel's case, and were thus entitled to $3,225. Alternatively, they claimed they were entitled to recover in quantum meruit for the value of their services. The trial court gave judgment for Hensel. In commenting on the lien described in the retainer agreement, the trial judge, in his oral statement of decision, pointed to the existence of a fiduciary relationship between the parties and the resulting duty of full disclosure by the attorneys. "If they intended some esoteric interpretation of that agreement, it isn't set forth in the express language. [¶] It should have been clearly explained to the plaintiff and his consent obtained before they proceeded, but it doesn't say that and it doesn't mean that. [¶] The plaintiff is entitled to a judgment declaring that there is no lien, and the defendants have no right to assert a lien." This court must assume that, when the trial judge used the words "no right to assert a lien," he referred to a lien in quantum meruit.

On appeal, the Cohen firm has abandoned any claim to a lien based upon a rate of $125 per hour for services performed, stating that their itemization "has been asserted only as the basis or foundation for the court's ultimate

determination of the reasonable value of services rendered." They rely sole-ly upon a lien in quantum meruit for the reasonable value of their services.

## DISCUSSION

A contingent fee agreement, whereby an attorney receives compensation only when he obtains a recovery for his client, necessarily involves some risk on the part of the attorney. This type of contract has been described as one "entered into by attorneys or speculators on the one part, and persons claiming some right of action which they are either unable or unwilling to prosecute at their own expense, on the other, and by which the attorney or speculator undertakes to render legal or other services, either personally or through an agent, and to take his compensation in the form of a stated proportion of the amount recovered if a recovery be effected." (*Eaton* v. *Thieme* (1936) 15 Cal.App.2d 458, 463 [59 P.2d 638].) A contingent fee contract involves a gamble on the result. (*Estate of Raphael* (1951) 103 Cal.App.2d 792, 796 [230 P.2d 436].)

Such speculation comes without a guarantee of financial rewards to the attorney. However, the attorney is protected against a change of mind by his client. ■ An attorney who accepts employment on a contingent fee arrangement and is later discharged by his client is entitled to "a *quantum meruit* recovery for the reasonable value of his services, upon the occur-rence of any contingency contemplated by his contract," whether or not the client had good cause to discharge the attorney. (*Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 786 [100 Cal.Rptr. 385, 494 P.2d 9], italics in original; *Salopek* v. *Schoemann* (1942) 20 Cal.2d 150, 153 [124 P.2d 21]; *Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 598 [124 Cal.Rptr. 297].) ■ Ap-pellants ask that we apply that rule to the instant case, where it is the attorney who has discharged the client.

No California court has addressed the question of the right of an attorney on a contingent fee contract to assert a lien upon amounts recovered by a former client when the attorney discharges the client and is unable to point to some action of the client which provided the attorney with justifiable cause for abandonment of the case. As a general rule, other jurisdictions have allowed recovery for services already rendered only when the attorney has justifiable cause for withdrawing from the case. They have denied any compensation when the attorney has voluntarily abandoned the case without good cause. (See 7 Am.Jur.2d, Attorneys at Law, §§ 262-266, pp. 298-303; Annot., Compensation for Attorney Who Withdraws (1978) 88 A.L.R.3d 246, § 2.)

Cohen's reason for abandoning Hensel's case was clearly expressed at trial by Steinbrecher. He said: "I remember seeing the letter that we were

withdrawing because we didn't feel the case had any potential, and, you know, nothing further needed to be said on it. [¶] It wasn't something I was going to dwell on. I represent quadriplegics and paraplegics and people with arms and legs off, et cetera. So, you know, just go on to the next thing. . . . [It was] after Chick Canzoneri, my investigator, reported back to me that I didn't see any way we could win the case. [¶] In other words, as creative and imaginative as a lawyer as I would like to think I am . . . I thought this case was a dead-blank loser at the point. We couldn't [uncover] any independent evidence of the speed or inattention on the part of the driver."

Cohen now seeks to apply a lien upon the fees which the Brodey firm will realize if they rescue this "dead-blank loser" through their creativity, imagination, and hard work. Cohen maintains that their abandonment of the case was proper, since Hensel knowingly and freely assented to termination of their employment. (Rule 2-111 (C)(5), Rules Prof. Conduct of State Bar.) However, employing the proper procedure in withdrawing from a case is not synonymous with withdrawal for justifiable cause. Appellants point out that in *Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 309 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334], the California Supreme Court held that, when an apparent conflict exists between an attorney's duty to his client and his public obligation to refrain from championing a cause which lacks merit, he will not be held liable in damages for choosing to honor the public obligation, unless his decision is shown to be "manifestly erroneous." However, while the attorney there was not held liable in damages, the court did not reward him with a share of any subsequent recovery.

*Pearlmutter* v. *Alexander* (1979) 97 Cal.App.3d Supp. 16 [158 Cal.Rptr. 762], is readily distinguishable from the case at bench. In *Pearlmutter,* the plaintiff attorney withdrew from the case after his client authorized a settlement of her claim and later changed her mind and refused to go forward with the settlement. In upholding the attorney's lien, the court found that his withdrawal was authorized by rule 2-111 (C) of the Rules of Professional Conduct, since the client's conduct made it unreasonably difficult for the attorney to carry out his employment effectively. Thus, the court found justifiable cause for the attorney's withdrawal from the case. As we have previously indicated, there was no justifiable cause in the instant case. We note, however, that *Pearlmutter* stated at page Supplement 20: "We see no reason to differentiate between the situation where the attorney is discharged and where the attorney is allowed to withdraw insofar as continuation of the attorney's written lien for fees is involved." Insofar as that dictum contradicts the opinions expressed here, it is disapproved.

In conclusion, we observe that appellant's position in this case is very similar to the classic situation of the man who, having killed his mother and

father, throws himself upon the mercy of the court because he is an orphan.[2] To put it another way, "There is no such thing as a free lunch."

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

---

[2]See *Williams* v. *State* (1972) 126 Ga.App. 350 [190 S.E.2d 785].