[No. B050445. Second Dist., Div. Seven. Nov. 21, 1991.]

JOSEPH E. DI LORETO, INC., et al., Plaintiffs and Respondents, v. ANN M. O'NEILL, Defendant and Appellant.

152

COUNSEL

Brian R. Shumake for Defendant and Appellant.

Beckman & Cohen and Joel Beckman for Plaintiffs and Respondents.

## OPINION

**LILLIE, P. J.**—Defendant Ann M. O'Neill appeals from summary judgment in favor of plaintiffs Joseph E. Di Loreto, Inc., a professional law corporation, and Joseph E. Di Loreto (Di Loreto) for the amount of $313,666.73 plus costs on Di Loreto's claim against O'Neill for breach of a written employment agreement.

### FACTUAL AND PROCEDURAL BACKGROUND

We set out only the allegations of the first amended complaint for breach of contract (second cause of action), Di Loreto's remaining causes of action against O'Neill having been dismissed prior to entry of the summary judgment on the second cause of action. Di Loreto alleged that in March 1982, O'Neill and he entered into a written employment agreement; Di Loreto was required to render legal services to O'Neill in an action for personal injuries she sustained as a result of the negligence of Commuter Bus Lines; the agreement provided for attorney's fees of 33⅓ percent of the gross recovery if the matter was concluded before trial and 40 percent of the gross recovery if the matter proceeded further; Di Loreto represented O'Neill in her action against Commuter Bus Lines through successful completion of a jury trial in July 1986, when a jury verdict was rendered in favor of O'Neill for a total sum, including prejudgment interest and costs, of $575,321.50; judgment in that amount was entered on July 7, 1986; in August 1986, Di Loreto advised O'Neill that pursuant to the employment agreement, a new employment contract would have to be negotiated for continued representation on appeal; O'Neill demanded that Di Loreto turn her file over to her and asserted her intent to retain a new attorney; on August 29, 1986, Di Loreto delivered O'Neill's entire file to her and in September 1986, O'Neill substituted another attorney, Brian Shumake, as attorney of record on any appeal; on September 5, 1986, Commuter Bus Lines filed a notice of appeal; on September 19, 1986, Di Loreto filed a "Notice of Attorney's Lien" in the underlying action; in December 1987, O'Neill, through attorney Shumake, accepted $558,000 in full payment of the judgment;[1] Di Loreto had performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the employment agreement; and O'Neill breached her contract with plaintiffs by failing and refusing to pay Di Loreto 40 percent of the recovery plus costs advanced, pursuant to the agreement.

O'Neill answered the complaint, asserting as affirmative defenses that Di Loreto had no contractual rights as he had willfully terminated all contracts;

---

[1] It was undisputed that O'Neill actually received in satisfaction of the judgment a total of $633,000 in two payments; $75,000 was paid to her on April 1, 1987, and $558,000 was paid to her on December 1, 1987. An acknowledgment of full satisfaction of judgment was filed February 10, 1988.

that Di Loreto was owed no duty of performance; and Di Loreto had acted with malicious intent, thereby barring his claims by the equitable defenses of unclean hands and laches.

Thereafter, Di Loreto filed a motion for summary adjudication of issues, which was opposed by O'Neill. In support of the motion, Di Loreto declared, inter alia, that although Commuter Bus Lines filed a notice of appeal in O'Neill's underlying personal injury action, counsel for Commuter Bus Lines wrote him a letter stating that the notice of appeal was merely to preserve his client's rights and that he had no intention of pursuing an appeal.[2]

After a hearing thereon, the court granted the motion; an October 26, 1989, order granting plaintiffs' motion for summary adjudication of issues established the following issues to be without substantial controversy: Di Loreto and defendant O'Neill entered into a valid, fully executed employment contract; Di Loreto fully performed all his obligations under the valid employment contract; Di Loreto, by fully performing all his obligations under the employment contract, is entitled to the negotiated fees as specified in the contract; and Di Loreto filed and served a valid attorney's lien to protect his interest in the judgment proceeds.

The minute order which contains the court's ruling on the motion for summary adjudication of issues stated in part: "The Court has reviewed the [August 1989] deposition of Ann O'Neill and notes that she does not deny executing the retainer agreement. Further, no declarations, affidavits or other competent evidence was submitted in opposition to the motion to the effect that the plaintiff had not performed under the terms of the agreement. . . ."[3]

Di Loreto thereafter moved for summary judgment on the ground that there was no defense to the action and that he was entitled to 40 percent of

[2]It can be inferred from Di Loreto's declaration that the appeal by Commuter Bus Lines was abandoned because the judgment was satisfied upon two payments totaling $633,000, the second payment being made in December 1987. This inference is also supported by the appellate court docket sheet, which indicates that Commuter Bus Lines filed a notice of appeal on September 5, 1986; the appeal was dismissed on February 3, 1988, pursuant to California Rules of Court, rule 10(c) (failure to file record). Although the docket sheet from the appellate court was not before the trial court prior to ruling on the motion for summary judgment, the appellate docket sheet was included in Di Loreto's opposition to O'Neill's "motion to amend dollar amount of plaintiff's proposed judgment," which motion was filed after entry of summary judgment, but the disposition of which motion is not revealed on our record. Appellant raises no issue as to this motion or the calculation of amount of the judgment on this appeal.

[3]In her deposition, O'Neill stated that she was not sure whether it was her signature on the employment agreement; she did not recall whether she signed any employment agreement

the total judgment received by O'Neill in the underlying action, including interest from the disbursement dates (see *ante*, fn. 1), which amounted to a total of $313,666.73.

In opposition to the motion for summary judgment, O'Neill submitted her declaration dated January 9, 1990, in which, for the first time, and contrary to her deposition testimony, she stated that she did have an oral agreement with Di Loreto which provided that he "would handle everything and would get paid if he got me money. Before trial his fee was 33 percent, after trial, with a recovery, his fee was 40 percent. He always told me that I owed him nothing if he didn't get me my money! He never told me I owed him his fee if he just got me a judgment, nor did he ever state that he would not represent me on an appeal. . . ." O'Neill also declared that she never knowingly signed the employment contract; there was never any explanation or discussion of it, and without "that ceremony to stand out in my mind, I can only speculate as to whether that is or is not my signature" on the contract.

After hearing, the court granted summary judgment. O'Neill filed timely notice of appeal from the judgment. Her appellate contentions are that summary judgment was improperly granted because triable factual issues exist with respect to whether she entered into the written employment agreement, whether Di Loreto entered into the agreement, and whether the terms of the written agreement are sufficiently unambiguous or certain as to make its interpretation a proper basis for summary judgment.

I

SUMMARY JUDGMENT PRINCIPLES

Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's

---

with Di Loreto, as she "signed a lot of papers," and "I could have possibly signed one, I don't know." She admitted, however, that she had an understanding, based on what Di Loreto told her, that "he would handle everything and that when he got my money for me, he would get a third, or 40 percent if it went to trial." In response to the question of whether, during the time that Di Loreto was representing her, she thought she had a written or an oral contract with him, she responded, "I didn't think about it at all." O'Neill stated that the first time she saw a copy of the employment agreement was when her attorney, Shumake, showed it to her.

favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. (*City of El Segundo* v. *Bright* (1990) 219 Cal.App.3d 1372, 1375-1376 [269 Cal.Rptr. 1]; *McAlexander* v. *Siskiyou Joint Community College* (1990) 222 Cal.App.3d 768, 773 [272 Cal.Rptr. 70].)

■ The moving party's burden on a motion for summary judgment is only to negate the existence of triable issues of fact in a fashion that entitles him to judgment on the issues raised by the pleadings; he is not required to refute liability on some theoretical possibility not included in the pleadings. (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466].)

What issues are material is determined mainly by the pleadings, the rules of pleading, and the substantive law relating to the particular kind of case. (*Pultz* v. *Holgerson* (1986) 184 Cal.App.3d 1110, 1114 [229 Cal.Rptr. 531].)

In light of the foregoing principles, we set out the substantive law with respect to the rights of discharged and withdrawing attorneys to compensation.

## II

### COMPENSATION OF ATTORNEYS

■ "In California it is clear that a client has an absolute right at any time to discharge an attorney, with or without cause. (*Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 792 . . . .)" (*Kroff* v. *Larson* (1985) 167 Cal.App.3d 857, 860 [213 Cal.Rptr. 526].) "In *Fracasse*, the court held that an attorney employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of services rendered up to the time of discharge, rather than the full amount of the agreed contingent fee. [Citations.] The rule is based upon the premise that a client should not be forced to pay a discharged attorney the compensation called for in the contract, since that amount may reflect neither value received nor services performed and could result in double payment of fees first to the discharged and then to a new attorney. . . . [¶] . . . [Where] the contingent fee is insufficient to meet the quantum meruit claims of both discharged and existing counsel, the proper application of the *Fracasse* rule is to use an appropriate pro rata formula which distributes the contingent fee among all discharged and existing attorneys in proportion to the time spent on the case by each. Such a formula insures that each attorney is compensated in accordance with work performed, as contemplated by *Fracasse*,

while assuring that the client will not be forced to make a double payment of fees." (*Spires v. American Bus Lines* (1984) 158 Cal.App.3d 211, 215-216 [204 Cal.Rptr. 531].)

■ "To the extent that such discharge occurs 'on the courthouse steps,' where the client executes a settlement obtained after much work by the attorney, the factors involved in a determination of reasonableness would certainly justify a finding that the entire fee was the reasonable value of the attorney's services." (*Fracasse* v. *Brent, supra,* 6 Cal.3d 784, 791.)

Where an attorney accepted a personal injury case on a contingent fee basis, performed some investigation and filed a complaint, but then determined that it was not worth his time to pursue that matter and told his client to look elsewhere for legal assistance, the court held that the attorney could not claim a part of any subsequent recovery by way of settlement or judgment, obtained by the efforts of a subsequent attorney. (*Hensel* v. *Cohen* (1984) 155 Cal.App.3d 563, 564, 568 [202 Cal.Rptr. 85]; see also *Estate of Falco* (1987) 188 Cal.App.3d 1004 [233 Cal.Rptr. 807] [court reached similar result as in *Hensel* (attorneys withdrew two months prior to scheduled trial date and the case was subsequently settled under supervision of trial judge)].)

## III

### ISSUE OF WITHDRAWAL BY DI LORETO

■ The issue of the manner of Di Loreto's withdrawal of employment is raised in O'Neill's three affirmative defenses in her answer. According to O'Neill, she did not discharge Di Loreto, but rather, when she came to his office to pick up her file on August 29, 1986, about a week before Commuter Bus Lines filed its notice of appeal in the underlying action, he "fired" her and told her to get out of his office because he did not want to represent her.

Relying on *Hensel* and *Falco*, appellant contends that a triable issue of fact exists as to whether Di Loreto's voluntary withdrawal or alleged abandonment prevents his recovery of any fee.

We conclude that the factual circumstances of the instant case and the clear and unambiguous language of the written employment contract show that this case is distinguishable from *Hensel* and *Falco*. Setting aside for the moment the issue of whether a dispute of fact exists as to whether O'Neill entered into the employment agreement, it is undisputed that before any withdrawal, Di Loreto had fully performed all obligations set out in the agreement.

The written employment agreement provided in pertinent part that Di Loreto "shall represent the undersigned in prosecuting a claim for damages arising out of an accident . . . . [¶] It is further expressly understood and agreed that in the event a judgment is received, Joseph E. Di Loreto must defend or resist any motion for a new trial, but in the event a judgment is not received, it will not be incumbent upon him to prosecute an appeal or motion for new trial. In no event shall it be incumbent upon said attorney to take or resist an appeal without further fee arrangements between the parties."

Despite appellant's attempts to imbue the above language with ambiguities, we conclude the contractual language is clear and unambiguous; the facts of the instant case are without dispute that Di Loreto fully performed all he was required to perform under the above contract. We find without merit appellant's claim that under the contract Di Loreto's right to any compensation required that he be attorney of record for O'Neill at the time she received funds. Although there is language that contemplates that Di Loreto be O'Neill's attorney at the time of receipt of funds in order for him to "pay himself from said funds directly, as a first disbursement of the gross recovery," there is also language granting Di Loreto "a lien upon all funds received from the proceeds for payment of the fees due him hereunder." The latter language does not contemplate that Di Loreto be attorney of record for O'Neill at the time of enforcement of his lien. This language, coupled with the clear language that the defense of an appeal was not part of Di Loreto's duties under the contract, indicates that Di Loreto had fully performed the contract.

In the instant case it is undisputed that the breakdown in the attorney-client relationship occurred on August 29, 1986, *after* Commuter Bus Lines' motion for new trial had been denied and judgment had been entered. In other words, the employment agreement had been fully performed at the time of any alleged withdrawal or abandonment. It is this fact which distinguishes the instant case from *Hensel* and *Falco,* wherein the attorneys withdrew prior to trial or completion of the matters for which they were retained.

Accordingly, we conclude that *Hensel* and *Falco* are inapplicable to the instant case. Thus, inasmuch as appellant's three affirmative defenses all essentially raise the same issue of Di Loreto's alleged unjustified withdrawal or termination of employment, we conclude that as a matter of law such affirmative defenses are without merit. We also find without merit appellant's claim that the contractual language is so ambiguous or uncertain as to preclude interpretation of it as a matter of law on summary judgment.

## IV

### EMPLOYMENT CONTRACT ISSUES

■ We have combed both the pleadings and O'Neill's papers filed in opposition to the motion for summary adjudication of issues and in opposition to the motion for summary judgment to determine whether in defense to the cause of action for breach of contract, O'Neill sought to raise the issue of quantum meruit as the proper measure of compensation or the issue of whether the contingent fee should be distributed on a pro rata basis.[4] For reasons not apparent on our record, and as to which we refrain from speculating, these issues are simply not pleaded. These issues were not before the court prior to the entry of judgment, and they are not raised in appellant's briefs on appeal. (See *ante*, fn. 2.)

Further, no place in the pleadings does O'Neill assert the claim that Di Loreto's employment was governed by an oral agreement. In fact, at her 1989 deposition, she admitted that during the time Di Loreto represented her, she did not think of the issue of whether she had an oral or a written contract with him. It was only in opposition to the motion for summary judgment that O'Neill raised, for the first time, any issue as to an oral agreement. However, as this issue is not embraced within the pleadings, Di Loreto is not required to address it, and it cannot create a triable issue of fact to defeat summary judgment, if summary judgment is otherwise appropriate. We accordingly find without merit appellant's argument that there is a triable issue of fact as to whether Di Loreto's performance was rendered pursuant to the written agreement or an oral agreement.[5]

The remaining contentions made by appellant that need to be addressed are whether triable issues of fact exist as to whether she entered into the

[4]O'Neill generally denied Di Loreto's allegations that the judgment against Commuter Bus Lines was satisfied in full. Although appellant appears to argue in her opening brief that it was only through the efforts of her subsequent attorney, Shumake, that Commuter Bus Lines eventually *settled* the prior lawsuit and paid the judgment, there is no competent evidence to this effect offered in opposition to Di Loreto's motions for summary adjudication of issues and for summary judgment. There is nothing in our record to indicate that Commuter Bus Lines seriously pursued any appeal; nor is there any evidence as to what work Shumake performed on O'Neill's behalf, if any, in bringing about payment of the judgment.

Accordingly, nowhere in the pleadings or in O'Neill's opposition did she raise any issue to counter Di Loreto's claim that if he is entitled to recover, he is entitled to the full measure of the contractual fee.

[5]Even were we to consider O'Neill's January 9, 1990, declaration and not disregard it as contradictory to her deposition testimony (see *Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1391-1392 [265 Cal.Rptr. 412]), the terms of the purported oral agreement would not defeat Di Loreto's right to recovery, even though according to the purported oral agreement, Di Loreto was to represent O'Neill on appeal. This is so because O'Neill admits that "after trial, with a recovery, his fee was 40 percent," and it is also undisputed that although Commuter Bus Lines filed a notice of appeal, the appeal was not

written employment agreement, whether Di Loreto entered into the agreement, and whether Di Loreto's alleged billing of O'Neill for his services in defending against Commuter Bus Lines' motion for new trial, which billing purportedly occurred on September 17, 1986, and March 23, 1987, voids the written employment agreement.

█ Although appellant attacks as conclusory and as insufficient to establish a prima facie case, Di Loreto's statement in his declaration that on March 1, 1982, he entered into a written employment agreement contract with O'Neill to render legal services in her personal injury cause of action against Commuter Bus Lines, we conclude that such a statement, along with the written contract containing a signature which O'Neill has never unequivocally denied as hers, is sufficient evidence to establish a prima facie case. Although O'Neill stated in her deposition that she was not sure if the signature was or was not hers, and could not recall signing such a contract, such evidence is insufficient to create a triable issue of fact because a failure to recall does not logically contradict Di Loreto's evidence.

O'Neill elaborates on her deposition testimony in her January 9, 1990, declaration. In that declaration she states that "perhaps I signed it sometime in 1985 when I signed a stack of documents [Di Loreto] wanted me to sign, which related to my releasing medical and employment records to him, but I never *knowingly* signed that [employment agreement]. I am guessing that it was signed in 1985 because the date on the top [setting out the date of O'Neill's accident] is 1985, and no one misdates a document with a future date! [¶] However, I can't say that I signed it because there never was any explanation or discussion of it! Without that ceremony to stand out in my mind, I can only speculate as to whether that is or is not my signature at the bottom of the page." O'Neill goes on to speculate further that "I suspect that [the written employment agreement] never existed until after he fired me, because when he tried to get me to sign a bad-faith contingency fee contract with him, he signed it first in front of me!" (Original italics.)

In her declaration, O'Neill starts with her inability to recall signing the employment contract and then proceeds to fashion various scenarios that perhaps may have occurred. However, such scenarios are unreasonable in light of her deposition testimony, in which she admitted that sometime during the first couple of months after she retained Di Loreto she had an "understanding," based on what he told her, that "he would handle everything and that when he got my money for me, he would get a third, or 40

---

prosecuted and it was subsequently dismissed for failure to file the appellate record. Accordingly, even under the terms of the oral agreement, Di Loreto had fully performed all of his contractual obligations.

percent if it went to trial." The only reasonable inference from such testimony and Di Loreto's declaration is that Di Loreto did orally explain the terms of the written employment agreement to O'Neill and she signed it.

When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. (*O'Neil* v. *Dake* (1985) 169 Cal.App.3d 1038, 1044-1045 [215 Cal.Rptr. 732].) We conclude that appellant's inferences to the effect that she did not sign the employment agreement are not reasonably deducible from any evidence and are insufficient to create a dispute of fact on the issue of whether she entered into the written employment agreement.

■ We also find without merit appellant's contention that a dispute of fact existed as to whether Di Loreto entered into the employment agreement because he purportedly did not sign a copy of it in 1982, but only signed it in 1989, after O'Neill opposed his motion for summary adjudication of issues and raised the issue of his failure to sign it.

Appellant appears to concede that Business and Professions Code section 6147, which requires that a contingency fee contract be signed by the attorney, is inapplicable to the instant employment contract because the contract was executed prior the enactment of section 6147. Moreover, appellant does not refute respondent's contention that the issue is governed by Civil Code section 3388, which states: "A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance." Accordingly, Di Loreto's failure to sign the contract in 1982 is not a legally significant fact and it is unreasonable to infer from such lack of signature that Di Loreto did not enter into the contract, considering the undisputed fact that he fully performed it.

■ Finally, we conclude to be without merit appellant's claim that Di Loreto somehow voided or repudiated the contract after he had fully performed it, by sending two letters to Mr. Shumake, one in September 1986, and the other in March 1987. In the first letter, Di Loreto stated that under his agreement, he was entitled to 40 percent "of the gross recovery, plus costs advanced, together with any interest which accrues on the judgment until paid," and also that since his employment agreement did not provide services for "any motion for new trial or appeal," Di Loreto will be billing Ms. O'Neill on an hourly basis for the work done in that respect. The 1987 letter simply provided Shumake an itemized list of services rendered after

judgment, indicating Di Loreto expended a total of about 23 hours on O'Neill's case after trial and up to the time the judgment was entered on about August 20, 1986.

In the trial court, Di Loreto submitted a declaration in which he explained that the reference to the motion for new trial was in error, and he only should have stated that he was not obligated to pursue an appeal; moreover, he never did bill O'Neill for any time spent successfully defending the motion for new trial; the March 1987 letter was sent in error and in any event does not constitute a billing as no amount is indicated to be due. As Di Loreto's declaration is uncontradicted, it is sufficient to show that he had no intent of repudiating or voiding the employment contract. Thus, the inferences appellant seeks to draw from the two letters are unreasonable. Moreover, because the letters were written after the contract had been fully performed by Di Loreto, the two letters do not create any triable issue of material fact sufficient to defeat Di Loreto's motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.