Filed 8/26/16  Cottone v. Cottone CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRANDI COTTONE,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>JEANIE LYNN COTTONE,<br><br>　　Defendant and Respondent. | G051676<br><br>(Super. Ct. No. 30-2010-00335370)<br><br>O P I N I O N |

　　　　　　Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

　　　　　　Rosen Saba, James R. Rosen and Elizabeth L. Bradley for Plaintiff and Appellant.

　　　　　　Inglis, Ledbetter, Gower & Warriner, Richard S. Gower and Gregory J. Bramlage for Defendant and Respondent.

　　　　　　　　　　*　　　　　　*　　　　　　*

Following a jury verdict in her favor against her uncle, Lee Cottone, on several negligence and intentional tort causes of action for sexually abusing her when she was a young girl, Brandi Cottone appeals the trial court's earlier summary judgment in favor of Lee's wife, her aunt Jeanie Cottone.[1]  Specifically, Brandi asserted claims of negligence against Jeanie, and assault, battery, negligence per se, and negligent infliction of emotional distress against both Lee and Jeannie, and intentional infliction of emotional distress against Lee.  Brandi based her complaint against Jeanie on Jeanie's alleged negligent supervision and failure to protect Brandi, thereby facilitating or aiding and abetting in her husband's actions.  But because Brandi presented no evidence to suggest Jeanie knew or should have known of the abuse, the trial court did not err in granting summary judgment.  Brandi asserts the trial court mistakenly sustained several of Jeanie's evidentiary objections, and erroneously failed to sustain some of hers, but our review discloses no error.  We therefore affirm the trial court's entry of summary judgment.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

Jeanie and Lee married in 1971 when he was around 19 or 20 years old and she was 17.

Robert Cottone is Lee's younger brother, and Brandi and her younger sister Kim are Robert's daughters.  Between 1998 and 2001 or 2002, when Lee was around 50 years old and Brandi was between eight and 12 years old, she often would visit her Uncle Lee and Aunt Jeanie, particularly during school breaks.   Lee and Jeanie's young granddaughter, Courtney, sometimes joined them.  According to Jeanie, during these visits, "[w]e enjoyed home cooking together, playing beauty parlor, playing board games,

---

[1]     Because the parties and many of the witnesses who submitted declarations share the same last name, we refer to them by their first names or familial relationship (niece, aunt, etc.) for clarity and ease of reference.

watching home movies, shopping, and occasionally going to the movie theater." In later years, Brandi's sister Kim also joined in the visits, which included sleepovers. Jeanie "didn't observe any signs of unusual behavior that suggested any sexual abuse was occurring in my home."

But Brandi later told her mother in 2006 when she was 16 years old that Lee had molested her more than 200 times by touching her with his hands on top of and inside her clothing or pajamas and rubbing her vagina, buttocks, and breasts. For instance, when Brandi was around nine years old, she stayed at Lee and Jeanie's house between Christmas Day 1999 and New Year's Day, and slept between Lee and Jeanie in their bed because she was afraid to sleep in the guest bedroom. Lee touched her on her vagina, buttocks, or breasts in his bed every night on that visit and on approximately five multi-night sleepover visits several months later in 2000.

Similarly, Brandi noted the same abuse continued in subsequent visits even when Kim and Courtney also stayed over and the three girls shared a bed in the guest room. Lee often came into the room, pushed aside her blanket, and molested her by touching her vagina, breasts, and buttocks. Jeanie claimed to be a light sleeper, rousing at slight noises or when Lee left the bed, but she asserted she did not know Lee was molesting Brandi in their bed or the guest room.

Jeanie had assured Brandi's parents before each visit that Brandi would be well cared for, including promises to take Brandi shopping or to the movies for a treat. Jeanie did not tell Brandi's parents that Brandi slept in their bed or that Lee slept only in his underwear. According to Brandi, when she sometimes resisted visiting her aunt and uncle, her mother persuaded her to go anyway, to avoid disappointing Jeanie.

At Lee's eventual criminal trial, Brandi testified that Jeanie did not wake up during Lee's abuse while she slept between them, nor did she tell Jeanie about the abuse.

Officer Amy Quiroz investigated Brandi's abuse allegations and did not consider arresting Jeanie because no evidence supported charges against her. The

3

prosecutor charged Lee with four counts of lewd and lascivious acts with a minor in violation of Penal Code section 288(a). Lee's first trial ended in a hung jury in September 2008, but at a second trial the jury convicted him on all four counts, and he was sentenced to six years in prison.

Following Lee's conviction, these civil proceedings commenced. Jeanie answered Brandi's complaint with a general denial and various affirmative defenses, and after the parties conducted discovery, Jeanie moved for summary judgment.

According to Jeanie's declaration in support of summary judgment, "The first time Brandi stayed overnight at my residence on Wheeler in Irvine, California, she slept between me and my husband because she was afraid to sleep by herself. . . . [¶] Brandi never woke me up and asked me for help, or gave me any indication that Lee was allegedly touching her vagina, breasts, and buttocks in my bedroom. Similarly, Brandi never woke me up and asked me for help, or gave me any indication that Lee was touching her on her vagina, breasts, and buttocks when she slept in the guest bedroom with her sister and cousin. Brandi never woke me up and asked me for help, or gave me any indication that Lee was allegedly touching her vagina, breasts, and buttocks in any part of my residence."

Jeanie's affidavit further stated, "I have never observed, heard or witnessed anything while Brandi was a guest in my residence which would indicate that Lee [] was allegedly touching Brandi on her vagina, breasts, and buttocks. [¶] If I had been aware of any of the alleged molestation or sexual abuse committed by Lee in my bedroom or the guestroom I would have done everything in my power to stop the alleged deviant behavior, including reporting such behavior immediately." Lee had never been arrested or charged with any sex crimes before Brandi's criminal case, and Jeanie had not suspected any abuse before then.

Brandi opposed summary judgment on grounds there were disputed issues of material fact whether Jeanie knew or should have known of the abuse in her home.

4

She pointed to Lee's and Jeanie's testimony in the criminal trial that Jeanie was a light sleeper, needed complete silence to sleep, and usually woke up when her husband awoke. Brandi claimed there was "no other evidence supporting Jeanie's claim she slept through Lee's molestation," but ignored her own testimony that she said nothing aloud to Lee or Jeanie during the abuse and that Jeanie had earplugs in her ears. Jeanie acknowledged she usually slept on her side, but claimed she did not generally wear earplugs when the children slept over. Brandi also pointed to Jeanie and Lee's early marriage as evidence of Lee's deviant sexual interest in minors, alleging their conception of their son before she turned 17 constituted statutory rape even though they married before he was born.

Brandi's opposition papers included a declaration from KathyG, who grew up as a neighborhood friend of the Cottones, especially Lee's younger sister, L. Kathy G. described an incident in 1977 just after she turned 18 and Lee was in his mid-20's, in which he and Jeanie assisted L. and Kathy G. when they had car trouble returning from Las Vegas. "Lee and I drove to an auto parts store where I bought the part he said I needed. When we got back into his two-seater car, Lee acted as though he was reaching for the stick shift between us, but instead reached across my lap and grabbed the inside of my left thigh and touched and rubbed my vagina."

Brandi's opposition also included L.'s declaration in which she described, as she had at Lee's criminal trial, several occasions when Lee was 13 or 14 and she was 5 years old and they played a "game" called "giggy-giggy" in which he placed his fingers in her underwear and touched her vagina. L. did not suggest Jeanie knew of this activity.

But she described other incidents "after I became an adult" in which Lee engaged in "sexually inappropriate behavior . . . in front of other family members," including Jeanie. For example, in 1998, around the time of Brandi's allegations and when Lee was nearing 50 years old and L. her 40's, Lee "wrestled [L.] down to the floor and pinned [her] down" at his adult son Lee's house, which Jeanie witnessed but "only stated that Lee 'missed his sister.'" L.'s declaration also described how "[o]n numerous,

almost countless other occasions during the same period and after, Lee made a habit of groping my breasts, buttocks and groin area whenever we passed by each other," including in Jeanie's presence. L. explained, "Often Lee's acts of groping me were accompanied by him making sound effects like, 'Honk!' or 'Beep!' or other similar words or noises." Additionally, at a family gathering, "and in his wife's presence, Lee surreptitiously took a photograph of my clothed breasts and projected the image onto Lee's and Jeanie's big screen TV for their guests." L. also stated that "[i]n Lee's and Jeanie's other son Eddie's house, Lee has come up from behind me and grabbed my hips and shoved his groin area into my buttocks, moving it up and down while holding onto me or pressing me against the stove area. On other occasions, I also saw Lee do the same thing to our sister, [M.], and even [to] Lee's [adult] son, 'Little Lee.'"

The trial court granted Jeanie's summary judgment motion. The court concluded Jeanie met her initial burden in moving for summary judgment based both on her declaration denying knowledge of Brandi's abuse and Brandi's testimony that Jeanie remained asleep during the abuse and that she (Brandi) told no one of the abuse at the time, including her aunt.

In a detailed ruling, the court explained: "Significantly, Plaintiff submitted no evidence that Defendant Jeanie Cottone had knowledge of *any* prior instances of sexual molestation of small children. At most, Plaintiff presents evidence of witnessed incidents between Lee Cottone and *adult* women. [Record citations omitted.]" (Original italics.) The court concluded Brandi did not meet her opposition burden with evidence that Jeanie "was 17 . . . at the time she married a 19-year-old Lee Cottone." Quoting *Chaney v. Superior Court* (1995) 39 Cal.App.4th 152, 157 (*Chaney*), the court observed, "'Although a wife's knowledge may be proven by circumstantial evidence, such inference must reflect the wife's actual knowledge and not merely constructive knowledge or notice.' . . . [¶] '[A]ctual knowledge can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on

6

speculation or conjecture. Only where the circumstances are such that the defendant "must have known" and not "should have known" will an inference of actual knowledge be permitted.' [¶] . . . [¶] 'Without knowledge of her husband's deviant propensities, a wife will not be able to foresee that he poses a danger and thus will not have a duty to take measures to prevent the assault.'"

The court concluded, "In this instance, Plaintiff's evidence that [Jeanie] witnessed [Lee] grope adult women . . . is insufficient to allow for a reasonable inference that [Jeanie] had knowledge Lee Cottone was likely to molest a child." In addition to *Chaney*, the court also relied on *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206, 210 (*Pamela L.*), concluding under that case that "there is no evidence Defendant unreasonably exposed Plaintiff to harm." Consequently, the court found Brandi's negligence and negligent infliction of emotional distress claims failed "for lack of a duty" arising from foreseeable danger.

As to Brandi's claims for assault, battery, and negligence per se (under Penal Code section 288(a) and Civil Code section 1708.5), the trial court observed her theory for Jeanie's liability amounted to aiding and abetting. The court noted, "To hold a [d]efendant liable for 'aiding and abetting,' the [d]efendant must 'reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.' [Citation omitted.]" The court concluded: "For the reasons explained above, as there is no evidence which allows for a reasonable inference Defendant *knew* of Lee Cottone's 'assaultive propensities,' there is no evidence which suggests [Jeanie] reached a 'conscious decision to participate in tortious activity.'" Finding no triable issues, the court entered summary judgment and Brandi now appeals.

II

DISCUSSION

Brandi asserts the trial court erroneously granted Jeanie's summary judgment motion. "We review orders granting summary judgment de novo." (*Vebr v. Culp* (2015) 241 Cal.App.4th 1044, 1050.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

On appeal, we scrutinize the record for triable issues of fact, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) A triable issue of material fact exists "'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co*. (2011) 199 Cal.App.4th 1132, 1144-1145.)

8

Brandi contends the trial court erred in granting summary because "a reasonable juror could readily believe that Jeanie *did not* sleep through the molestation." (Original emphasis, other italics omitted.) Brandi argues, "The[] facts raise a reasonable inference that Jeanie knew or ***realized*** that Lee was molesting Brandi, because it is more likely than not that throughout years of Lee's repeated molestations of Brandi in the marital bed, just inches from where Jeanie, a light sleeper, allegedly slept, Jeanie saw, heard, felt and/or otherwise perceived Lee molesting Brandi. At the very minimum, the facts raise a reasonable inference that Jeanie ***should have realized*** that Lee was molesting Brandi, regardless of whether she tried to block out sounds of the assaults by using earplugs." (Original emphasis.)

But as the trial court observed, "'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.'" (Quoting *Joseph E. Di Loreto, Inc. v. O'Neil* (1991) 1 Cal.App.4th 149, 161.) In light of Brandi's trial testimony affirming twice that Jeanie never woke up during the abuse, the trial court reasonably could determine that no juror would conclude Jeanie actually perceived the abuse as it happened and did nothing about it.

Brandi asserts that in relying on *Chaney*, the trial court misapprehended the difference between nonfeasance and misfeasance. As Brandi explains it, the difference is evident in the Good Samaritan doctrine under which a person generally has no duty to rescue another and therefore is not liable for a failure to act (nonfeasance). In contrast, a Good Samaritan defendant who undertakes to help another — *or a defendant who is obligated to help or protect the victim because of a special relationship with the victim* — is liable for acting unreasonably (misfeasance) when he or she "has made the plaintiff's position worse and has created a foreseeable risk of harm from the third person." (*Pamela L.*, *supra*, 112 Cal.App.3d at p. 209.) The defendant's alleged misfeasance is assessed under the ordinary care standard, i.e., whether he or she knew or should have

9

known of the danger posed.  But the trial court cited *Pamela L.* in its summary judgment ruling, concluding "there is no evidence Defendant unreasonably exposed Plaintiff to harm," and we must presume the trial court grasped Brandi's distinction between nonfeasance and misfeasance based on *Pamela L.*

In any event, *Pamela L.* does not aid Brandi.  There, in overturning demurrer in favor of the wife, the appellate court concluded the requisite foreseeability to state a claim for negligence was present where the plaintiff children alleged the wife knew her husband "had a record as a sexual offender and had molested women and children in the past," but nevertheless invited the children to swim with her husband while she was at work and without warning the children, their parents, or the police of the danger he posed.  (*Pamela L.*, *supra*, 112 Cal.App.3d at pp. 208, 210-211.)

Here, at the summary judgment stage following discovery, Brandi presented no evidence Lee had a record as a sexual offender or that Jeanie knew or should have suspected he had a history of sexually molesting children.  She relies on Jeanie's age when she conceived her son with Lee and they married, but such relationships fall under a "Romeo and Juliet" exception in Brandi's own invocation of California's statutory rape law (§ 261.5, subd. (b)).  The trial court also reasonably could conclude no juror would equate with child abuse Lee's groping Kathy G. in his sports car in his 20's or his ongoing boorish behavior with his sister L. in their 40's.  Such conduct, while it remained disgusting even 30 years after it occurred, as Kathy G. explained in her affidavit, was nothing like the wife's knowledge of the husband's sexual offense conviction and sexual abuse of children in *Pamela L.*  The trial court did not err in granting summary judgment on the evidence presented.

Finally, Brandi contends the trial court erred in sustaining Jeanie's objections to portions of some of the declarations she submitted opposing summary judgment, and she argues the court erred in failing to strike portions of Jeannie's declaration.  An appellate court "review[s] the trial court's evidentiary rulings on

10

summary judgment for abuse of discretion." (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)

The trial court did not err. Five of the seven objections the court sustained simply excised from the declarations speculative or improper and conclusory opinion testimony by the declarants. For example, Brandi concluded her declaration by speculating, "Now that I'm older, I believe that *Jeanie must have known* that Lee was molesting me . . . ." (Italics added.) Similarly, Kathy G. surmised following her car ride with Lee that, "Given my reaction and obvious distress, *it would have been impossible* for Lee's wife Jeanie to have seen me and my behavior when we returned *and not known* that something terribly wrong had gone on between Lee and me on our brief trip to and from the auto parts store." (Italics added.) The trial court also culled from L.'s declaration three similar statements speculating or opining about Jeanie's mental state or what she knew or was aware of based on Lee's actions. In each case, the trial court left intact the factual underpinning of what each witness described or observed. But the trial court did not err in excluding the witnesses' improper speculation or opinion testimony (Evid. Code, § 803) because the range of reasonable inferences that a juror could draw about Jeanie's mental state or what she knew were for the trial court to draw on summary judgment, not the witnesses.

The trial court also sustained two objections to portions of Brandi's father's declaration in which he stated, first, that he (Brandi's father, Robert) knew that within several years after Lee married Jeanie, Lee had an extramarital affair with a woman named Lori who was only 16 or 17 years old. Second, Robert also claimed that Jeanie knew or learned of the affair because she confronted Lori, "slapped her and warned her never to see or have sex with Lee again." Jeanie had admitted in her deposition that she may have pushed Lori because Lori was a jealous troublemaker with whom *Robert* had broken up and, in retaliation, Lori was sowing family discord by sending dirty notes to her husband, Lee. Jeanie objected to Robert's statements on hearsay grounds and for lack

11

of personal knowledge or foundation. The trial court did not abuse its discretion in sustaining the objections on those grounds. Because Robert furnished no foundation or basis for personal knowledge of Lori's or Lee's private sexual conduct in an alleged extramarital tryst, the trial court reasonably could conclude Robert's allegations were based on rumor or hearsay.

Similarly, the trial court did not abuse its broad discretion in overruling Brandi's objections to portions of Jeanie's testimony. For example, Brandi asserts Jeanie improperly speculated about *Brandi*'s state of mind by suggesting that Brandi "began to visit our residence in order to spend time with her cousin Courtney Cottone." But Brandi also asserted Jeanie arranged the visits, and Jeanie's statement therefore was relevant to explain the purpose of the visits. We have reviewed Brandi's other objections and, while Brandi disagreed with Jeanie's statements, they were not speculative or irrelevant, but instead properly expressed Jeanie's view of material subjects, including that she "loved Brandi" and never intended to hurt her, nor was aware of any abuse nor any prior sex crimes or charges against Lee, and would have stopped the abuse if she had known of it.

III

DISPOSITION

The judgment is affirmed. Respondent is entitled to her costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.

12