Filed 3/24/25  Orcutt v. Vice CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RICHARD V. ORCUTT, | 2d Civ. No. B335120 |
| Plaintiff and Appellant, | (Super. Ct. No. 21CV-0030) (San Luis Obispo County) |
| v. | |
| NATHANIEL VICE, | |
| Defendant and Respondent. | |

Richard Orcutt sued Nathaniel Vice for intentional infliction of emotional distress, alleging he was responsible for sending threatening cards to implicate Orcutt in a crime.  Orcutt appeals from the trial court's grant of summary judgment against him.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

Anonymous cards were mailed to four real estate agents, complaining about racial minorities living on Cavalier Lane in San Luis Obispo.  The return address was given as "Cavalier Neighbors."  The cards warned the agents against renting homes to racial minorities, and threatened to shoot the renters or the

agents if that occurred. Orcutt was arrested and prosecuted for sending the cards but the charges were ultimately dismissed.

Vice and four other college student roommates lived in a house on Cavalier near Orcutt. Several months before the cards were sent to the real estate agents, Orcutt sent anonymous letters to the roommates' landlord to complain about a dog owned by one of the roommates, Alex S. The letters claimed to be sent by the "Cavalier Lane Homeowners Association," which does not actually exist. As a result, the dog was removed from the residence.

Vice and Alex S. went to Orcutt's house to talk about the dog. In a declaration filed with the trial court, Vice stated that was the only time he interacted with Orcutt. In his deposition, Vice was asked if he wanted to keep the dog. He responded, "Alex wanted to keep the dog." Vice was asked if he also wanted the dog to stay and responded, "It would have been nice to have kept the dog there." Vice said his goal in going to Orcutt's home was to "eliminate the confusion" with Orcutt about the dog and avoid any neighbors being upset.

In his declaration filed with the trial court, Orcutt stated that on another occasion he spoke to an unidentified tenant of Vice's residence about current and former residents of Cavalier Lane, and that some of that information, which Orcutt does not describe, appeared in the four cards sent to the real estate agents.

Orcutt sued Vice for intentional infliction of emotional distress, making criminal threats (Pen. Code, § 422, subd. (a)), and preparing false evidence (Pen. Code, § 134). The complaint alleged that Vice was "a person legally responsible for the issuance of the four correspondences," and the letters were

created to implicate and harm Orcutt. The complaint alleged that Orcutt's arrest, prosecution, and other adverse consequences caused him severe emotional distress. The operative pleading for the motion for summary judgment was the first amended complaint, which added allegations that Vice conspired with, and aided and abetted, one or more of his roommates in "the issuance" of the correspondence to the real estate agents.

In his deposition, Vice testified he did not know who drafted, wrote, created, or sent the cards. He stated in his declaration that he did not write the cards. In his supplemental declaration, he stated, "I had absolutely no involvement in any way shape or form in causing the existence of any of the four letters, the four envelopes, or any part thereof. I have absolutely no knowledge about who is responsible in any way for the existence of the four letters or the four envelopes. I have absolutely no knowledge about how the four letters or the four envelopes came into existence." He added that he was not involved in encouraging, drafting, writing, issuing, or sending any of the letters, or providing any of the materials or ideas for them, and he did not know who did.

Forensic document examiner Linda L. Mitchell compared the cards and their envelopes with handwriting samples she dictated to Vice to write. She "eliminated Nathaniel Vice as the writer of the four threatening letters and envelopes with the highest level of certainty (elimination/beyond a reasonable doubt), level 9 out of 9." In response, Orcutt submitted the declaration of forensic scientist Larry F. Stewart, who opined that Mitchell should have relied on " 'non-requested' " samples of Vice's handwriting, and accordingly, she should have reached " 'no conclusion' " or found the analysis "inconclusive, pending the

availability of additional comparison standards." Stewart did not express his own opinion as to whether Vice was the author of the cards.

The trial court granted summary judgment in favor of Vice.[1]

## DISCUSSION

### *Tort elements*

At issue is whether Vice committed any conduct associated with sending the cards to the real estate agents or conspired to do so. "The elements of the tort of intentional infliction of emotional distress are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

Civil conspiracy requires proof "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. . . . [¶] 'Bare' allegations and 'rank' conjecture do not suffice for a civil conspiracy." (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333.) Aiding and abetting a tort requires " ' "intentional participation with knowledge of the object to be attained." ' " (*Upasani v. State Farm General Ins. Co.* (2014) 227 Cal.App.4th

---

[1] The appeal challenges only the ruling regarding intentional infliction of emotional distress and does not challenge the summary judgment against Orcutt for the Penal Code causes of action.

4

509, 519, italics omitted.)

*Summary judgment*

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  A defendant meets their burden by showing "that one or more of the elements of the cause of action . . .  cannot be established." (*Id.*, subd. (p)(2).)  The burden then shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . .  The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Ibid.*)

A defendant moving for summary judgment is not required "to conclusively negate an element of the plaintiff's cause of action. . . . All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. omitted.)  "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 845.)

On appeal of a grant of summary judgment, we review the record de novo.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in their favor.  (*Lyle*

5

*v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

*Triable issue of fact*

We conclude the facts upon which Orcutt relies do not establish that Vice had any involvement in writing or sending the cards, participated in doing so, acted in concert, or even had knowledge of the conduct.

Vice testified at his deposition that he did not know who wrote or sent the cards.  His declarations stated he was not involved in sending the cards or "causing [their] existence."  His "declarations may well be self-serving, 'but where (as here) [they are] uncontradicted, case law establishes that such a showing can provide the basis for summary judgment.' " (*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 636.)

Orcutt contends the trial court erred in considering Vice's supplemental declaration, which was filed with his reply to Orcutt's opposition to summary judgment.  The declaration responded to the theories raised for the first time in Orcutt's opposition to summary judgment that Vice could have provided materials for the letters, contributed ideas or encouragement, or mailed them.  Orcutt has forfeited this issue because he did not object to Vice's supplemental declaration in the trial court.  (Evid. Code, § 353, subd. (a); *Guastello v. AIG Specialty Ins. Co.* (2021) 61 Cal.App.5th 97, 105.)[2]

Forfeiture aside, the trial court did not abuse its discretion by considering the supplemental declaration.  "[T]he trial court's

_____

[2] Orcutt objected to a separate declaration of Vice's attorney.  The trial court declined to rule on the objections because that evidence "was immaterial to the Court's disposition of this motion.  (Code Civ. Proc., § 437c, subd. (q).)"

6

consideration of additional reply 'evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material.' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449.)  Orcutt did not ask the court to continue the hearing to respond to the supplemental declaration. Moreover, in light of Vice's deposition testimony that he did not know who drafted, wrote, created, or sent the cards, his supplemental declaration did not provide "entirely new evidence," but "only filled gaps in the evidence" created by Orcutt's opposition.  (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538 [anti-SLAPP motion].)

Mitchell's expert opinion eliminated Vice as the author. "When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761-762.) Notably, Stewart's declaration did *not* conclude that Vice was the author.  His criticism of Mitchell's method, and his disagreement with the certainty of her conclusion, are not evidence of the contrary proposition, i.e., that Vice was the author.

Orcutt argues that the author of the cards was familiar with the neighborhood, Vice had a motive because he was upset that Orcutt complained about his roommate's dog, and the return address on the cards ("Cavalier Neighbors") was similar to the fictitious organization Orcutt used in his complaints about the dog ("Cavalier Lane Homeowners Association").  In our view, none of these theories would support a jury verdict that Vice, rather than one of his roommates or another neighbor, had any

7

involvement in writing or sending the cards.

A party opposing summary judgment "may rely upon inferences, but 'those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1035.) As in *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at page 864, evidence that the defendant "may have possessed the motive, opportunity, and means to enter into an unlawful conspiracy . . . is not enough. . . . Speculation . . . is not evidence." Orcutt's speculation that Vice was somehow responsible for sending the cards is "insufficient to create a dispute of fact." (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

Because Orcutt did not present evidence that would allow a reasonable jury to find that Vice participated in the writing or "issuance" of the cards, the trial court properly granted summary judgment. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 845.)

DISPOSITION

The judgment is affirmed. Vice shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.                    YEGAN, J.

Craig B. van Rooyen, Judge

Superior Court County of San Luis Obispo

_____

Decker Law, James D. Decker, Griffin R. Schindler and Christopher M. Jones for Plaintiff and Appellant.

Hall Hieatt Connely & Bowen, Catherine Hall Devlin and Jay A. Hieatt for Defendant and Respondent.