[No. D003697. Fourth Dist., Div. One. July 28, 1986.]

KEVIN J. DONNELLY, Plaintiff and Appellant, v.
HAROLD G. AYER, JR., et al., Defendants and Respondents.

980

COUNSEL

Greene, O'Reilly, Broillet, Paul & Simon, Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg and Antony Stuart for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Brisgaard and Barbara A. Maggio for Defendants and Respondents.

OPINION

BENKE, J.*—Kevin J. Donnelly appeals a summary judgment favoring defendants Harold G. Ayer, Jr., Phillip L. Ginsburg and the law firm of Ayer and Ginsburg on Donnelly's complaint for legal malpractice.

## FACTS

By a retainer agreement signed July 29, 1980, Kevin Donnelly employed the law firm of Ayer and Ginsburg to represent him in an action for personal injuries sustained as a result of an altercation with a bus driver. The retainer agreement provided "[t]he law firm may withdraw at any time upon giving reasonable notice to the client." During the representation of Donnelly, Ayer advanced to him approximately $13,000. Donnelly did not prevail at trial.

On October 13, 1983, Ayer wrote to Donnelly, informing him he would no longer be representing him. Ayer advised Donnelly of the availability of a motion for a new trial or an appeal. He also advised him to retain another attorney. One month later Ayer again wrote to Donnelly advising him that he was no longer representing him.

After Ayer informed Donnelly he would not be representing him, Donnelly told Ayer in writing he had consulted another attorney and would be filing a malpractice action against Ayer.

By December 27, 1983, Donnelly had discussed his contemplated malpractice suit with six or seven attorneys, and one attorney informed Donnelly he had a "good case" against Ayer. Donnelly then wrote to Ayer, telling him he was suing him for $10,000. However, Donnelly informed Ayer that

---

*Assigned by the Chairperson of the Judicial Council.

if Ayer would pay him $10,000,[1] Donnelly would not file the malpractice action against him.

On January 9, 1984, Donnelly and Ayer signed a mutual release form. By the agreement embodied in it, Donnelly received $1,000 in cash, and in return agreed not to bring a malpractice action against Ayer. Ayer agreed not to pursue collection of sums of money advanced to Donnelly. Ayer's associate, Brian Dunn, provided the release form to Donnelly and was present when he signed it. Donnelly read the release form before he signed it and signed it of his own free will.

On September 28, 1984, Donnelly filed a complaint against Ayer and his law firm for legal malpractice.

On August 8, 1985, Ayer brought a motion for summary judgment, claiming Donnelly had waived his right to sue Ayer and his law firm for malpractice by signing the release. After hearing, the court granted Ayer summary judgment.

Donnelly appeals, contending the court erred in granting Ayer's motion for summary judgment. We conclude summary judgment was proper.

DISCUSSION

I

■ In considering a motion for summary judgment (Code Civ. Proc., § 437c, subd. (a))[2] brought by a defendant, the trial court must determine whether the plaintiff has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ■ Summary judgment is proper only if the affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge to be sufficient to present a triable issue. "The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial." (*Sheffield* v. *Eli Lilly and Co.* (1983) 144 Cal.App.3d 583, 611 [192 Cal.Rptr. 870]; *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 436, fn. 7 [186 Cal.Rptr. 228, 651 P.2d 815]; *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 362 [178 Cal.Rptr. 783, 636 P.2d 1121].) In

---

[1] Apparently, Donnelly wanted Ayer to personally pay him the $10,000 Donnelly had turned down as a settlement offer at trial, an offer which at the time of trial Donnelly thought to be inadequate.

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

examining the sufficiency of the affidavits, those of the moving party are to be strictly construed, and those of the opposing party are to be liberally construed. (*Sheffield* v. *Eli Lilly and Co.*, *supra*, 144 Cal.App.3d at p. 611.)

## A

■  Here the undisputed facts show Donnelly signed the mutual release voluntarily and after he had read it. Simply stated, the release precludes the underlying lawsuit and is thus a complete defense to the malpractice action.

■  Donnelly seeks to avoid the obvious by asserting his attorney-client relationship was never officially terminated by the filing of a substitution of counsel. From this, he argues a presumption of undue influence existed at the time he signed the release and this presumption raises issues of fact.

Donnelly correctly recites the law relating to circumstances under which the attorney-client relationship terminates. However, the evidence showed the attorney-client relationship between Ayer and Donnelly ended when, on October 13, 1983, following the trial, Ayers notified Donnelly he would take no further action in the case. Under the retainer agreement entered into by Donnelly, Ayer needed only give notice of termination in order to end the attorney-client relationship. Hence, the posttrial termination was consistent with the retainer agreement. Moreover, Donnelly's deposition testimony clearly reflects his own understanding the professional relationship with Ayer came to an end upon such notice, at which time he immediately sought to hire new counsel.

Although Donnelly asserts a factual dispute exists as to the termination of the attorney-client relationship, he presented no evidence the parties treated their relationship as having survived the posttrial termination letter sent by Ayer. The statutes and case law cited by Donnelly do not support his assertion the relationship continued after October 13, 1983.

## B

■  Donnelly further argues even if the attorney-client relationship did terminate, there is still a presumption of undue influence because Ayer continued to have power and authority over him resulting in the mutual release. He claims there was considerable evidence of extensive financial entanglement with Ayer and that Ayer used these entanglements to force him into the mutual release. Although Donnelly again correctly states the circumstances and law under which the presumption of undue influence arises, he presents no facts showing he fell prey to Ayer. At his deposition,

Donnelly himself admitted he signed the document freely and voluntarily. Moreover, the voluntary nature of the release was undisputed below. Indeed, Donnelly offered to withdraw the threat of malpractice if Ayer would pay him $10,000. Ayer counteroffered to pay $1,000 and to release any claims he might have for money advanced to Donnelly. Donnelly read the release, understood it and signed it. While there was perhaps far more personal and financial entanglement between Donnelly and Ayer than should be present in an attorney-client relationship, the record is devoid of evidence that Ayer *used* this entanglement to coerce an agreement with Donnelly.

## C

■ Donnelly contends the release is invalid as a matter of law because it was obtained in contravention of the California Rules of Professional Conduct. However, rule 6-102 provides: "A member of the State Bar shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice. *This rule shall not prevent a member of the State Bar from settling or defending a malpractice claim.*" (Italics added.) Here, Ayer and Donnelly entered into an agreement to settle an existing malpractice claim after the attorney-client relationship had been terminated and Donnelly had consulted several other attorneys. Ayer proposed a settlement in response to Donnelly's threat of a lawsuit and a demand of $10,000 from Ayer. Donnelly failed to show Ayer improperly attempted to exonerate himself in violation of rule 6-102.

## D

■ Finally, Donnelly urges the trial court misapplied the law pertaining to summary judgment. The court was required to examine the facts presented to it under applicable rules of evidence in order to determine whether there were triable issues. Donnelly has made no showing the trial court failed to apply the proper test. Rather, the supporting documents and affidavit submitted by Donnelly were woefully inadequate. Donnelly did not submit his own affidavit, and the declaration submitted by his attorney is fraught with both legal conclusions and representations of which the declarant had no personal knowledge. (See *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 815 [116 Cal.Rptr. 412].) Documents appended to Donnelly's points and authorities consist of police reports which are inadmissible (see *Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895]), irrelevant trial testimony of a witness to Donnelly's original confrontation with the bus driver, attorney billing data which, again, is neither relevant nor properly authenticated, and an assortment of documents that are objectionable both as hearsay and as not being authenticated. (See *Martin* v.

*Johnson* (1979) 88 Cal.App.3d 595, 602 [151 Cal.Rptr. 816].) Contrary to Donnelly's assertions, the court did not ignore issues of fact or improperly weigh the evidence. Summary judgment was proper.

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Staniforth, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 15, 1986.