[No. A057413. First Dist., Div. One. Jan. 12, 1994.]

PATRICIA RAMIREZ, Plaintiff and Appellant, v.
JAMES C. STURDEVANT et al., Defendants and Respondents.

## COUNSEL

Laurence O. Kaufman and Eve Triffo for Plaintiff and Appellant.

Long & Levit, Joseph P. McMonigle, Randall A. Miller and Gerald K. Carroll for Defendants and Respondents.

## OPINION

**STEIN, J.**—This appeal presents an issue which appears to be of first impression in California: the conflict of interest, or potential conflict of interest, occurring between a client and an attorney negotiating attorney fees as part of a settlement of the client's case. We hold that where, as here, there is evidence that a conflict of interest arose between attorney and client which may have affected the ultimate settlement of the case, the settlement negotiations and settlement should be examined by an impartial tribunal to determine if the client's interests have been forcefully represented. In conducting that review we place the burden of proof on the attorney to demonstrate that the attorney's own pecuniary interest did not interfere with the duty to promote the best interests of the client. Finding that neither the settlement court nor the trial court specifically conducted such a review, we remand the matter to the superior court for further proceedings.

### FACTS

Ramirez was fired by her employer, Del Monte Corporation.[1] She hired Attorney James C. Sturdevant et al. (Sturdevant) to represent her before the

---

[1] Ramirez was fired when she refused to return to her office following a transformer fire which released toxic chemicals, causing the building to be evacuated. Del Monte rejected her proposal that she continue her work at another site until reassured that her office was safe.

labor commission. Sturdevant, working on an hourly fees and costs basis, obtained a favorable ruling for Ramirez. Del Monte, however, refused to abide by the ruling. Sturdevant explained that he did not have the resources to prosecute a wrongful termination action on a contingency-fee basis. Ramirez, unwilling to continue on a costs-plus-fees basis, accordingly hired another attorney, Brad Seligman, to represent her in the superior court. Seligman filed a complaint on Ramirez's behalf, which complaint contained a prayer for attorney fees. Seligman later amended the complaint to state a claim for attorney fees under *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] (discussed in greater detail, *post*).

Ramirez became disenchanted with Seligman. Learning that Sturdevant now had resources which would enable him to prosecute her case, Ramirez fired Seligman and rehired Sturdevant. The parties executed a retainer agreement which, with the benefit of hindsight, Ramirez claims is unfair in a number of its provisions, chief among them the fees provision. Under it, Sturdevant became entitled to "33 1/3% of all amounts recovered by compromise before commencement of jury selection, or 40% of any amounts recovered thereafter by compromise, judgment or arbitration." In addition, Sturdevant became entitled to any attorney fees "payable apart from any recovery of damages." In the meantime, Ramirez's former attorney, Seligman, filed in the superior court a notice of lien for costs and the reasonable value of his services. (See *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 791 [100 Cal.Rptr. 385, 494 P.2d 9]; and *Spires* v. *American Bus Lines* (1984) 158 Cal.App.3d 211, 216 [204 Cal.Rptr. 531].)

Sturdevant immediately took substantial action on Ramirez's behalf, and over the next few months incurred significant costs and expenses. Matters came to an abrupt halt, however, when the superior court, apparently to everyone's surprise, granted Del Monte's motion for summary judgment.[2] Ramirez declined to accept a postjudgment settlement offer of $66,000 plus a waiver of costs, choosing instead to mount an appeal. By this time Sturdevant apparently began to have doubts as to the amount of damages which might be recovered on Ramirez's behalf. In addition, he felt that Ramirez had an inflated idea of the value of her case and he was concerned about expenses he already had advanced on her behalf. Sturdevant therefore agreed to represent Ramirez on appeal, but only upon three conditions: (1) that she begin paying Sturdevant $500 per month against costs already advanced, (2) that she pay appellate and postjudgment costs as incurred and

---

[2] The same court, but in a different case, had denied a nearly identical motion within the previous year. That motion also had been filed by Del Monte in connection with events following the transformer fire. In addition, the court's tentative ruling in Ramirez's case denied the motion.

billed, and (3) that she agree to accept any settlement offer of at least $150,000. With respect to this last condition, however, Sturdevant promised to attempt to obtain a greater amount. These conditions and promises were incorporated into a second, supplemental, agreement between Sturdevant and Ramirez.

Division Five of this court, in an unpublished opinion, reversed the summary judgment.[3] Settlement negotiations, which will be detailed later, thereafter began in earnest. Although all previous settlement negotiations had contemplated a lump-sum payment, Sturdevant convinced Del Monte that the better approach would be to negotiate separate amounts for damages to Ramirez, costs, and attorney fees directly payable to Sturdevant. Sturdevant ultimately negotiated a settlement under which Del Monte agreed to pay Ramirez $150,000, costs of $35,000 and attorney fees of $215,000. Ramirez was satisfied with the gross amount of the settlement ($400,000), but maintained that Sturdevant's fees should be limited to no more than 33⅓ percent of that amount. Sturdevant and Ramirez thereafter agreed that Ramirez would authorize the settlement, that the monies would be placed in an escrow account, and that they would work out their differences after the money was received. This action followed.[4]

Ramirez asserted in the trial court, and reasserts here, a number of breaches of fiduciary duty and other abuses allegedly occurring throughout the course of her relationship with Sturdevant. The trial court rejected all of her claims with the exception of the claim that any fees due Seligman should come out of the fees awarded to Sturdevant. Because the parties had settled that aspect of the case, however, the court, although finding it meritorious, took no action on it other than to use it as the basis for a determination that neither party had prevailed and thus neither was entitled to its costs or attorney fees.[5] We agree that, in general, the record demonstrates no breach of duty on the part of Sturdevant. We cannot say on this record, however, that the settlement agreement was untainted by the conflict of interest inherent in Sturdevant's dual representation of the interests of Ramirez and of himself in the settlement negotiations. In the interests of justice we

---

[3]*Ramirez v. Del Monte Corp.* (May 26, 1988) A037561 (nonpub. opn.).

[4]In the meantime, Ramirez's former attorney, Seligman, claimed a right against that settlement for collection of costs and attorney fees on a quantum meruit basis. Ramirez and Sturdevant settled with Seligman, each agreeing to pay one-half of his fee with Ramirez paying an additional $5,000 as costs.

[5]Ramirez argues on appeal that she should not have been required to pay any of Seligman's quantum meruit claim. (See *Spires* v. *American Bus Lines, supra,* 158 Cal.App.3d 211.) She states neither argument nor authority, however, for the proposition that a court can interfere with a negotiated settlement absent some evidence of extrinsic fraud. We decline to consider the issue further.

therefore will remand the matter to the superior court for an evidentiary hearing on the issue.

## DISCUSSION

### I.

### *The Initial Retainer Agreement*

Ramirez does not complain about Sturdevant's representation of her in the labor commission action. She makes no argument relating to the termination of the attorney-client relationship at that time. Her complaints begin with the first retainer agreement. ▮ She argues that the agreement was unfair to her because it permitted Sturdevant to calculate any contingency fee as against the gross recovery rather than the net recovery after costs.[6] She argues that it unfairly shifted the burden to her to pay Seligman's fees.[7] ▮ Finally, she attacks the provision, discussed above, giving Sturdevant a right to any attorney fees payable apart from damages.

▮ We begin by recognizing that, in general, the negotiation of a fee agreement is an arm's-length transaction. (*Setzer* v. *Robinson* (1962) 57 Cal.2d 213, 217 [18 Cal.Rptr. 524, 368 P.2d 124]; *Baron* v. *Mare* (1975) 47 Cal.App.3d 304, 311 [120 Cal.Rptr. 675].) Sturdevant accordingly was entitled to negotiate the terms on which he would accept employment as he wished, and, absent issues of duress, unconscionability, or the like, Ramirez has no cause to complain that the terms Sturdevant negotiated were favorable to him.

▮ Ramirez's arguments as to calculation of any contingency fee are irrelevant if no contingency fee is paid. Because, following remand, it may be determined that Sturdevant's fee should be calculated according to the contingency fee clause, we will, however, consider those arguments. As to the provision providing for calculation of the fee as against the gross recovery, the question is whether the fee thereby became "so exorbitant and wholly disproportionate to the services performed as to shock the conscience." (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 134 [207 Cal.Rptr. 302,

---

[6]Paragraph 12 of the agreement recites that any monetary recovery for Ramirez or award for fees or costs shall first be allocated to Sturdevant for fees, costs and expenses incurred but not paid by Ramirez and "[r]eimbursement of unpaid costs shall be made first from any amount specifically allocated for that purpose, second from any monetary recovery, and third from any award of fees."

[7]Paragraph 4 provides: "It is understood and agreed that CLIENT will be solely responsible for the compensation due, if any, for prior counsel retained by the CLIENT in the prosecution of these claims."

688 P.2d 911], internal quotation marks omitted; and see Rules Prof. Conduct, rule 4-200.) Although it appears that other attorneys, such as Seligman, routinely calculate a contingency fee after deducting costs from any gross settlement, we cannot say that to do otherwise shocks the conscience. ▮ The same is true as to the provision entitling Sturdevant to any fees payable apart from damages. That provision, in and of itself, provides no grounds for claiming unconscionability.

Ramirez complains, however, that the fee provision was ambiguous in that it provided both for a percentage of any amounts recovered and for fees payable apart from recovery of a damages award. We perceive an ambiguity in that the provision could be read as permitting Sturdevant to recover *both* a percentage of Ramirez's recovery, *and* fees otherwise payable. As Sturdevant, however, never attempted to recover both amounts, this potential ambiguity is not at issue. Indeed, the arguments put forth by Ramirez do not focus on any ambiguity. Rather, their main thrust is that there was no legal basis for an award of attorney fees separate from a recovery for damages. This argument, discussed in greater detail *post*, is irrelevant here. The contract simply provided that *if* any such fees were recovered, they belonged to Sturdevant.

Ramirez also complains that the contract did not define the circumstances under which fees might be payable apart from any recovery of damages.[8] We do not see that the failure exactly to specify the circumstances which might trigger application of a contract provision renders the provision ambiguous. Nor does the provision become ambiguous because it permits a party some discretion. The remedy is not to strike or interpret the provision, but to determine whether the party's actions pursuant to it were unconscionable, taken in bad faith or subject to attack on some other grounds. In any event, in our opinion, the term at issue is not susceptible of more than one interpretation. Under it Sturdevant was entitled to any award or payment of attorney fees made in addition to, or separate from, any award or payment of damages to Ramirez.

## II.

*Sturdevant's Right to Withdraw as Counsel*

▮ ▮ The initial retainer agreement contained the further provision that Sturdevant, upon notice, might withdraw as counsel at any time.

---

[8]Ramirez argues: "While a statutory fee award is classified as a contingent fee, when is this provision triggered rather than the 'straight' one-third contingency fee? What triggers it? Who decides whether fees are payable 'apart from any recovery of damages'? Does the attorney decide this? If so, how and when? And when does the duty arise to notify the client that the attorney's pecuniary interest may come into conflict with the client's if this provision is invoked?"

Ramirez's position, essentially, is that contrary to this provision, absent cause for withdrawal, Sturdevant was unconditionally obligated to prosecute her appeal. From this position she argues that Sturdevant was required to inform her that he could not withdraw from the case, that he breached a fiduciary duty in failing to so inform her, that he therefore wrongfully coerced her into entering into the second, or supplemental, retainer agreement, and that the provisions of the supplemental agreement were not supported by valid consideration.

We see no basis in the law, or in logic, for a conclusion that an attorney never may withdraw from a case except for cause. A lawyer violates his or her ethical mandate by *abandoning* a client (*Pineda* v. *State Bar* (1989) 49 Cal.3d 753, 758-759 [263 Cal.Rptr. 377, 781 P.2d 1]), or by withdrawing at a critical point and thereby prejudicing the client's case. (Rules Prof. Conduct, rule 3-700(A)(2); *Vann* v. *Shilleh* (1975) 54 Cal.App.3d 192, 197 [126 Cal.Rptr. 401].) We are, however, aware of no authority preventing an attorney from withdrawing from a case when withdrawal can be accomplished without undue prejudice to the client's interests. Rather, in situations such as the present, the disincentive for withdrawing is the potential loss of any attorney fees. (See *Estate of Falco* (1987) 188 Cal.App.3d 1004 [233 Cal.Rptr. 807]; and *Hensel* v. *Cohen* (1984) 155 Cal.App.3d 563 [202 Cal.Rptr. 85], discussed *post.*) Rules of Professional Conduct, rule 3-700 prohibits an attorney from withdrawing from pending matters without court permission, where permission to withdraw is required, or from withdrawing until appropriate steps have been taken to avoid reasonably foreseeable prejudice to the rights of the client. Code of Civil Procedure section 284 provides that an attorney may withdraw from an action, before or after final judgment, upon the consent of both client and attorney, or upon the order of the court. Implicit in these provisions is the conclusion that an attorney is entitled to withdraw, either with the consent of his or her client, or without that consent if withdrawal is approved by the court. There is no reason here why a court might decline to permit withdrawal. (See *Mandell* v. *Superior Court* (1977) 67 Cal.App.3d 1, 4 [136 Cal.Rptr. 354]: in determining whether to permit withdrawal, court must exercise its discretion reasonably.) Sturdevant had represented Ramirez through summary judgment and was prepared to file a notice of appeal and appropriate postjudgment motions whether or not he continued as her attorney. We perceive nothing unduly prejudicial in withdrawing after protecting Ramirez's rights on appeal. In a similar situation it was found, ". . . the evidence showed the attorney-client relationship between Ayer [attorney] and Donnelly [client] ended when, on October 13, 1983, following the trial, Ayers [*sic*] notified Donnelly he would take no further action in the case. Under the retainer agreement entered into by Donnelly, Ayer needed only give notice of termination in order to end the

attorney-client relationship. Hence, the posttrial termination was consistent with the retainer agreement." (*Donnelly* v. *Ayer* (1986) 183 Cal.App.3d 978, 983 [228 Cal.Rptr. 764].)

Ramirez cites *Estate of Falco, supra,* 188 Cal.App.3d 1004 and *Hensel* v. *Cohen, supra,* 155 Cal.App.3d 563. These cases, however, hold no more than that an attorney who withdraws from a case for reasons other than "justifiable cause," may not later recover fees from that client on a quantum meruit basis. Although, as noted, the holdings in these cases provide a disincentive for withdrawing, they do not prohibit it.[9]

■ As Sturdevant was entitled to withdraw from the case, it was no breach of fiduciary duty to fail to inform Ramirez otherwise. It follows that Sturdevant was further entitled to negotiate those conditions under which he would continue to represent Ramirez, and that his agreement to continue his representation afforded the consideration for Ramirez's consent to the terms of the supplemental agreement.

III.

*The Terms of the Supplemental Retainer Agreement*

■ To the extent that the basic fee provision gave Sturdevant the discretion to negotiate either a lump-sum settlement, or a bifurcated or trifurcated settlement, one part of which would be his attorney fee, it created a potential conflict of interest. Under such a provision an attorney, in theory, could determine which approach might lead to the greatest amount of attorney fees, and assuming the client could be convinced to go along with

---

[9]In each of these cases the attorney, like Sturdevant, represented a client under a contingency-fee agreement. In each, the attorney withdrew as counsel and, after the client, represented by another, obtained a recovery, sought payment of fees in quantum meruit. The courts noted that recovery in quantum meruit was proper when the client had discharged the attorney, but questioned whether it would be proper when it was the attorney who terminated the relationship. They found that the right to fees depended upon whether the attorney had withdrawn for justifiable cause, i.e., mandatory as opposed to permissive withdrawal under the statute or State Bar rules. (188 Cal.App.3d at pp. 1015-1016; 155 Cal.App.3d at pp. 567-569.) As the *Hensel* court stated, it was rejecting the notion that an attorney should be permitted to "accept a personal injury case on a contingent fee basis, determine that it is not worth his time to pursue the matter, instruct his client to look elsewhere for legal assistance, but hedge his bet by claiming a part of the recovery if a settlement is made or a judgment obtained through the efforts of a subsequent attorney." (*Hensel* v. *Cohen, supra,* 155 Cal.App.3d at p. 564.) These cases, however, do not stand for the proposition that an attorney is permitted to withdraw from representation only for "justifiable cause"; indeed, they implicitly recognize the right of the attorney to withdraw for other reasons. They hold only that if the attorney does in fact decide to withdraw for such reasons, he or she will be barred from recovering fees on a quantum meruit basis.

such approach, could maximize attorney fees at the expense of the client. The danger inherent in this conflict of interest increases dramatically where, as here, the attorney obtains the client's agreement to accept a particular settlement before the settlement negotiations begin in earnest, because the attorney, at least in theory, no longer needs to convince the client of the approach to be taken. ■ Ramirez, noting that the combined provisions gave Sturdevant this advantage, asserts that under Probate Code section 16004, subdivision (c), it therefore must be presumed that Sturdevant breached a fiduciary duty when he negotiated the terms of the supplemental retainer agreement. This statute, enacted in 1986 and restating the provisions of former Civil Code section 2235, provides: "A transaction between the trustee and a beneficiary which occurs during the existence of the trust or while the trustee's influence with the beneficiary remains and by which the trustee obtains an advantage from the beneficiary is presumed to be a violation of the trustee's fiduciary duties. This presumption is a presumption affecting the burden of proof. This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee."

It was generally understood that Civil Code former section 2235 applied to the attorney-client relationship (e.g., *Walton* v. *Broglio* (1975) 52 Cal.App.3d 400, 403 [125 Cal.Rptr. 123]), and we see no reason why Probate Code section 16004 also should not apply to that relationship. The statute, however, does no more than affect the burden of proof. In other words, under it, the trustee/attorney has the burden of proving that the transaction at issue did not violate a fiduciary duty. (Evid. Code, § 606.) Where, as here, the trustee/attorney produces evidence that the transaction was conducted at arm's length with an intelligent, experienced and sophisticated client, the trial court is entitled to conclude that the burden of proof has been met. ■ In reviewing that conclusion, our only duty is to determine whether or not that conclusion is supported by substantial evidence. (*Priester* v. *Citizens Nat. etc. Bank* (1955) 131 Cal.App.2d 314, 317 [280 P.2d 835].) ■ In addition, the last sentence of this provision specifically exempts from the presumption of undue influence any agreement relating to the "hiring or compensation" of the trustee/attorney. This exemption has been held to apply "even where there is a pre-existing attorney-client relationship." (*Walton* v. *Broglio, supra,* 52 Cal.App.3d at p. 404; and see *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515, 519 [198 Cal.Rptr. 725]: "A contingency fee contract may be modified by the parties at any time during the subject litigation.")

■ In all events, and contrary to Ramirez's contentions, substantial evidence supports the conclusion that Sturdevant did not take unfair advantage of Ramirez in negotiating the supplemental retainer agreement. Ramirez

already had changed attorneys twice in the action and was perfectly aware that she could do so again. Prosecuting an appeal is a proceeding discrete from proceedings in the trial court, and often is accomplished by someone other than the trial attorney. Sturdevant, as we have discussed, was entitled to withdraw from the case, and thus was entitled to negotiate the terms under which he would continue. Ramirez's interest in continuing with Sturdevant may have caused her to agree to terms she otherwise would have refused, but that fact does not by itself translate into duress or a breach of fiduciary duty. Finally, we can see no reason why, under the circumstances present here, the supplemental agreement should be struck down simply because Sturdevant did not advise Ramirez that she should seek advice of other counsel in negotiating with him. Counsel could only have explained that Sturdevant was certainly entitled to insist on reimbursement of advanced fees and that $150,000 was a reasonable settlement figure.

 Ramirez appears to argue that it was unfair or unconscionable for Sturdevant to condition his continued representation of her on her agreement to a minimum settlement figure of $150,000. We see nothing inherently wrong or unfair in such a term where, as here, it represents a reasonable assessment of the value of a claim and the attorney promises to attempt to obtain a greater amount in settlement. Indeed, a promise by a client to accept a reasonable amount in settlement promotes the important public policy favoring settlement of claims. (See *Villa* v. *Cole* (1992) 4 Cal.App.4th 1327, 1338 [6 Cal.Rptr.2d 644]; *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434, 441 [163 Cal.Rptr. 47].) We cannot fault an attorney who has spent, or who anticipates spending, a substantial amount of time prosecuting a case under a contingency fee agreement, for being concerned that the client might reject a reasonable settlement offer. Such a rejection risks that the client, and thus the attorney, ultimately will recover nothing and be out-of-pocket the incurred costs of litigation. At the very least it risks an increase in the cost of litigation without a concomitant increase in the attorney's compensation. In addition, serious consequences may attend the rejection of a reasonable settlement offer, which consequences may affect the ability of the attorney to obtain compensation for services rendered. (Code Civ. Proc., § 998, subds. (c) and (e).)

On the record before us, the proposed minimum settlement figure, $150,000, appears to be a generous assessment of the value of Ramirez's claim. Sturdevant offered the testimony of several expert witnesses that Ramirez's claim was problematic, both in terms of liability and damages, and that it had a settlement value of no greater than $150,000. We find nothing improper in Sturdevant's insistence on conditioning his continued representation on Ramirez's agreement to accept that settlement as a minimum. Finally, in our opinion, Ramirez is not really complaining about the

condition. It did not limit Ramirez's recovery, but simply stated a minimum acceptable amount. Her complaint, rather, is that Sturdevant used this provision to exclude her from settlement negotiations and fashion a settlement which benefitted Sturdevant more than Ramirez. While we agree that a potential conflict of interest thereby was created, we do not agree that this potential requires that the provision itself be struck. The issue is not the provision per se, but the actions taken pursuant to the provision.

## IV.

### *The Conflict of Interest Inherent in the Settlement and Settlement Negotiations*

As noted, Sturdevant's retainer agreement included the provision that Sturdevant would be entitled to any "attorneys' fees payable apart from any recovery of damages," and the complaint filed against Del Monte stated a claim for attorney fees under *Brandt* v. *Superior Court, supra,* 37 Cal.3d 813. No attempt was made to negotiate a separate award of fees, however, until after reversal of the summary judgment. Instead, all negotiations contemplated a lump-sum settlement, a percentage of which would be paid to Sturdevant as his contingency fee.

The summary judgment was reversed in May 1988. By August, Del Monte had hired new attorneys to handle the case. By fall 1988, Sturdevant and Ramirez were discussing settlement strategies and the expenses of going to trial, and their relationship was beginning to deteriorate. One point of conflict related to costs. Ramirez, who, under the terms of the supplemental agreement, had paid when billed all "costs and expenses on appeal or in post-judgment proceedings in the trial court," plus $500 per month towards reimbursement of preappellate costs, felt that she was not required by the agreement to pay costs incurred in preparing for trial after reversal of the summary judgment. She stated that she had exhausted her savings and indicated that she felt that Sturdevant should advance costs as he had prior to the summary judgment. Sturdevant felt that in representing that she refused and/or had become unable to pay these costs, Ramirez was expressing an intention to breach the retainer agreement. He thereafter flatly refused to advance any further costs, a refusal which meant that certain expert witnesses would not be deposed, making settlement even more imperative.

A second area of dispute revolved around Sturdevant's decision to negotiate a separate award of attorney fees. Sturdevant apparently had always expected to be paid on a contingency fee basis. By October 3, however, he had decided that the retainer agreement authorized him to negotiate attorney

fees separate from any damages due Ramirez. He so informed Ramirez, telling her that because it appeared that Del Monte harbored personal animosity towards her, he believed he would be able to gross a greater settlement amount if he bifurcated the settlement negotiations. At first Ramirez neither agreed nor disagreed to this procedure, but she later disagreed vehemently. In the meantime, however, Sturdevant suggested to Del Monte that they negotiate damages and attorney fees separately, at the same time informing Ramirez that an asserted desire to net $200,000 was "completely unreasonable." On October 17 Sturdevant told Del Monte that he would recommend that Ramirez take $150,000, and that he believed she would accept that number. Sturdevant did not in fact ask Ramirez if she would accept $150,000, believing that under the terms of the supplemental retainer agreement, Ramirez was obligated to accept a figure of less than that amount, i.e., $150,000 less costs and attorney fees. Del Monte came back with an offer to pay Ramirez $50,000. Sturdevant responded with a demand for $468,000: $150,000 for Ramirez, $35,000 in costs and $283,000 attorney fees. In the meantime, on October 20, Ramirez, who appears to have been unaware of the details of Sturdevant's negotiations, instructed him to make a demand for $350,000, which she calculated would net her $219,333 after Sturdevant's contingency fee was paid.[10] Sturdevant refused to make this demand, noting that it was a reduction from the demand he had just made and asserting that it would undermine his credibility with Del Monte. On October 25 Sturdevant, apparently for the first time, informed Ramirez of the settlement demand he had made. Ramirez responded, in essence, that Sturdevant should continue with the settlement negotiations and that they would work out their differences later, but "please be clear that I have not authorized the 'bifurcation approach', under any circumstances." Thereafter, at the mandatory settlement conference Sturdevant, who felt that there was no longer any dispute as to what Del Monte was willing to pay in as damages to Ramirez and as costs, negotiated a settlement of $400,000:

---

[10]Sturdevant asserts that Ramirez did not express suspicion of the bifurcated settlement approach until "the final hour of settlement negotiations." The record, however, is equally consistent with the conclusion that Ramirez was not aware that Sturdevant was in fact negotiating his fees with Del Monte until the matter was all but settled. Thus, Sturdevant first proposed this approach to Ramirez on October 3, when Ramirez neither agreed nor disagreed to it. By October 6, he had proposed the approach to Del Monte. On October 7, Ramirez wrote to Sturdevant stating, among other things, "I want to conclude this case and for you to recover your proper costs and the contingency fee." On October 10, counsel for Del Monte indicated that Del Monte might be willing to negotiate fees separately, if Ramirez approved. Sturdevant did not attempt to obtain approval from Ramirez, apparently believing it to be unnecessary, both because he felt the retainer agreements authorized him to negotiate attorney fees separately from damages and because Del Monte had not approved that approach formally. Del Monte gave that formal approval on October 17, and on the same day, without contacting Ramirez, Sturdevant informed Del Monte that he would recommend that Ramirez take $150,000. It does not appear that Sturdevant communicated to Ramirez that he was in fact separately negotiating fees until after he had received her October 20 proposal.

$150,000 for Ramirez, $35,000 for costs and $215,000 as Sturdevant's attorney fees. Sturdevant did not attempt to negotiate any additional attorney fees as compensation for Seligman. Ramirez signed the settlement agreement on December 29, although as between Sturdevant and Ramirez it was understood that she signed under protest and did not agree to the distribution of funds.

We begin by noting that the ultimate settlement as to Ramirez appears to have been reasonable, and perhaps even generous. Although Seligman had made a $900,000 demand pursuant to Code of Civil Procedure section 998, and Sturdevant himself had demanded $525,000 prior to the motion for summary judgment, expert testimony established that the total value of the case was between $100,000 and $200,000, out of which, presumably, attorney fees would have to be paid. In addition, there is no question but that clients often have unrealistic ideas of the value of their cases and that attorneys may have to persuade them to settle for less than they believe their entitlement to be. Moreover, we are not unsympathetic to the need and desire of attorneys to settle actions in such a manner as to protect their own interests in addition to those of the client.

Nonetheless, we are disturbed by a number of matters occurring during the settlement negotiations at issue here. These include the failure to attempt to recover attorney fees payable to Seligman; if there was a basis for paying attorney fees incurred by Ramirez, it should have applied to *all* of her attorney fees. There is the apparent failure to attempt to obtain a greater amount for Ramirez than $150,000. We recognize that when Ramirez agreed to accept a settlement figure of $150,000 she was in fact agreeing to accept a net amount of less than $100,000. In obtaining $150,000 for her, therefore, Sturdevant technically fulfilled his promise to attempt to negotiate a higher settlement for her; nonetheless, it is a matter for concern that Sturdevant appears to have opened negotiations with that particular figure and based his lack of communication with her on the grounds that she was obligated to accept that amount. There is Sturdevant's insistence on over $200,000 in attorney fees when a few months earlier he was willing to proceed on the assumption that he would receive no more than one-third of $150,000 as his fee. There is the fact that Ramirez, possibly unaware of the terms of the ongoing settlement negotiations, instructed Sturdevant to seek a lump-sum settlement of $350,000, which according to her calculations would net her $219,333. We find it hard to believe that Del Monte's animosity towards Ramirez was so strong that it would have rejected her demand in favor of the ultimate settlement had it been given the choice. We recognize that it would not have made tactical sense for Sturdevant to convey Ramirez's proposal to Del Monte. This difference between proposal and settlement, however, underlines the conflict between counsel and client.

In addition, there is the evidence that Ramirez not only did not authorize bifurcated settlement negotiations, but that she specifically directed Sturdevant not to bifurcate the negotiations. Although Sturdevant argues that he was authorized to separately negotiate attorney fees by the retainer agreement, we do not read the provision as authorizing such negotiations without the consent of the client. It states no more than that should fees become separately *payable*, they belong to Sturdevant. As Ramirez has pointed out, the agreement does not specify when fees might become separately payable, and certainly does not expressly confer upon Sturdevant the power to determine when fees might be separately payable. That the retainer agreement did not specifically authorize Sturdevant's approach, however, does not mean that it was prohibited. We see no reason why, in an appropriate situation, an attorney should not bifurcate a settlement. Indeed, we can conceive of situations where a bifurcated approach should be taken even over the client's objection, at least when the client's interests in fact are being represented. The issue is not whether the settlement negotiations might be bifurcated, but whether it was proper under the circumstances to take a bifurcated approach, and whether the conflict of interest inherent in that approach adversely affected Ramirez.

A related cause for concern is the questionable nature of Sturdevant's entitlement to a separate award of attorney fees. Sturdevant's theory was based on the decision in *Brandt* v. *Superior Court, supra,* 37 Cal.3d 813. *Brandt* was not a wrongful termination case, but a bad faith insurance case. The court there concluded that when "an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort." (*Id.* at p. 817.) The court was careful to distinguish attorney fees as an element of damages from attorney fees *qua* attorney fees. Recoverable fees would be those incurred to compel payment of the policy benefits (p. 815), as opposed to "those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Ibid.*) Plaintiffs' attorneys were hopeful that the *Brandt* rationale could be extended beyond bad faith insurance cases to other situations involving a breach of the covenant of good faith and fair dealing—such as wrongful termination cases. There is no evidence that such an extension ever had been sanctioned judicially, however, and in 1990 (after the negotiations at issue here), Division Four of this court expressly found such an extension to be unwarranted. (*Mouchette* v. *Board of Education* (1990) 217 Cal.App.3d 303, 317 [266 Cal.Rptr. 1].) In any event, even under a *Brandt*-type theory, the

only attorney fees recoverable would be those incurred in attempting to enforce the employment contract. Fees incurred in bringing the wrongful termination action—which fees would make up the bulk of those sought here by Sturdevant—would *not* be recoverable.

We emphasize that although we are somewhat disturbed by all these matters, we have not concluded that Sturdevant breached any duty owed to Ramirez. In many, or even most circumstances, an attorney cannot be faulted for demanding an amount to which the client has agreed in advance, or for convincing opposing counsel that attorney fees are recoverable apart from any award of damages. Such actions often inure to the benefit of the client and, indeed, may well have done so here. We find only that the dual nature of the settlement negotiations itself created a conflict of interest, and that there is evidence from which it might be concluded that the conflict prejudiced Ramirez such that further consideration becomes necessary.

We have found no California case which has considered this conflict. It has been the subject of an ongoing analysis, however, in the federal courts, particularly in connection with the litigation of class actions wherein attorney fees are authorized by statute. (See 42 U.S.C. § 2000e-5(k).) These cases actually address two situations: the simultaneous negotiation of damages and fees, and a settlement offer conditioned on plaintiffs' counsel's waiver of any claims for attorney fees. We are not specifically concerned with the latter situation, but the same basic conflict occurs in each: the duty of counsel to promote the client's interest in obtaining the highest settlement amount as opposed to the interest of the attorney in obtaining satisfactory compensation for work done. It has been suggested that in such situations "trial courts [should] insist upon settlement of the damage aspect of the case separately from the award of statutorily authorized attorney's fees. Only after court approval of the damage settlement should discussion and negotiation of appropriate compensation for the attorneys begin. This would eliminate the situation found in this case of having, in practical effect, one fund divided between the attorney and client." (*Prandini* v. *National Tea Co.* (3d Cir. 1977) 557 F.2d 1015, 1021.) The United States Supreme Court has recognized the problem and proposed solution of it, although it has not passed judgment on it. In *White* v. *New Hampshire Dept. of Empl. Sec.,* (1982) 455 U.S. 445 [71 L.Ed.2d 325, 102 S.Ct. 1162], the court simply noted at footnote 15, pages 453-454 [71 L.Ed.2d at pages 332-333]: ". . . the petitioner and *amici* have urged that prejudgment fee negotiations could raise an inherent conflict of interest between the attorney and client. Because the defendant is likely to be concerned about his total liability, it is suggested, he may offer a lump-sum settlement, but remain indifferent as to its distribution as 'damages' or 'attorney's fees.' In pursuing negotiations, the

argument continues, the lawyer must decide what allocation to seek as between lawyer and client. Accordingly, petitioner argues, to avoid this conflict of interest any fee negotiations should routinely be deferred until after the entry of a merits judgment."

The *Prandini* approach has been rejected by other courts, however, which concluded that the better approach is to consider each case on its own merits. This approach is illustrated by the decision in *Mendoza* v. *United States* (9th Cir. 1980) 623 F.2d 1338, 1352-1353: "Although we find the scenarios offered by Sanchez [client] to be no more than suggestive of mere potential conflicts, we cannot endorse the procedure used here to reach agreement on attorneys' fees. Negotiation is necessarily a give and take process, and all active elements are weighted in the balance. We cannot indiscriminately assume, without more, that the amount of fees have no influence on the ultimate settlement obtained for the class when, along with the substantive remedy issues, it is an active element of negotiation. See *Prandini* v. *National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977). . . . [¶] Whether the existence of this potential conflict requires a trial court to reject a settlement proposal depends upon the circumstances of each case. The presence of simultaneously negotiated attorneys' fees should cause the court to examine with special scrutiny the benefits negotiated for the class. It would rarely be an abuse of discretion for a trial court to reject a settlement proposal where such combined negotiation took place. But rejection of a settlement is not automatically required in such cases—there may be circumstances present which appear to neutralize the potential for impropriety. Such a judgment is appropriately within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation. Thus, while we strongly discourage the simultaneous negotiation of attorneys' fees and substantive issues in class action settlement negotiations, *accord*, *Prandini*, 557 F.2d at 1021, we do not believe rejection of a resulting settlement in every case is appropriate." (Fns. omitted; see, also, *Moore* v. *National Ass'n of Securities Dealers, Inc.* (D.C. Cir. 1985) 762 F.2d 1093, 1100-1106 [246 App.D.C. 114], and cases discussed therein.)

We hold, as did the court in *Mendoza*, that the better approach is to consider each case on its own merits. We therefore decline to find that the inherent conflict in dual negotiations necessarily invalidates any resulting settlements. The question remains as to how each case may be considered on its own merits. As to this question, the procedure followed in the federal class action cases provides an apt model. There, by statute, any settlement reached by the parties must be approved by the trial court. (28 U.S.C. § 23(e).) The appellate courts then review the order approving or disapproving the settlement for an abuse of discretion in light of the circumstances of

the case. (*Mendoza* v. *United States*, *supra*, 623 F.2d at pp. 1346-1347.) We find that a similar procedure should be adopted in any case involving separate negotiation of attorney fees. The parties may, if they wish, negotiate a separate settlement of damages and attorney fees. That settlement, however, should be approved by an impartial tribunal charged with the duty of determining whether or not a fair and reasonable balancing of the interests of the plaintiff and plaintiff's attorney was reflected in the negotiations. The settlement may be reviewed by the court at a settlement conference, or by the court in which the action is filed on motion of a party. As with other situations involving a conflict of interest, in the absence of any evidence to the contrary it will be p resumed that the conflict prejudiced the client. (E.g., *Kraus* v. *Davis* (1970) 6 Cal.App.3d 484, 490 [85 Cal.Rptr. 846]; *Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 709 [61 Cal.Rptr. 386].) The order approving or disapproving the settlements may be reviewed for an abuse of discretion. Unlike the courts in the class action cases, where it must further be determined that the substantive terms of the settlement are fair and reasonable (*Grunin* v. *International House of Pancakes* (8th Cir. 1975) 513 F.2d 114, 123), the trial court in cases such as this is *not* charged with the duty of insuring that the settlement reflects the actual value of the case or ultimately is fair to the parties. Its duty simply is to ensure that the settlement was not tainted by conflict of interest between attorney and client.

■■■■ Having so concluded, we consider whether the superior court in fact determined that no actionable conflict of interest occurred here, or whether the record otherwise indicates that Ramirez's interests were reasonably protected. We find nothing in the statement of decision or judgment demonstrating that the superior court actually considered whether the conflict of interest between Ramirez and Sturdevant tainted the ultimate settlement. The statement of decision focuses on the terms of the retainer agreements and the value of the case. We have enumerated a number of factors from which it might be concluded that the settlement was in fact tainted by the conflict of interest. On the other side of the balance is the evidence that Sturdevant told Del Monte that he would not negotiate his fees until after they had reached an agreement as to Ramirez's damages, and that the ultimate settlement, again, appears to have provided reasonable compensation to Ramirez.

The record also reflects, however, that although Sturdevant asserted that he wished to settle Ramirez's claim before negotiating his fees, he in fact countered Del Monte's $50,000/$35,000/$150,000 offer with a demand of $150,000/$35,000/$283,000. As relevant to the argument that Ramirez's recovery was reasonable, the question is not whether Sturdevant ultimately negotiated a reasonable recovery for Ramirez, but whether his interest in

obtaining a settlement of attorney fees may have caused him to seek less for Ramirez than he otherwise would have attempted to obtain. Even aside from the issue of fees, we would be reluctant to say that an attorney has represented a client adequately by representing that the client will accept a pre-agreed amount when it appears that the defendant may be willing to pay more.

We emphasize that we have not concluded that Sturdevant prejudiced Ramirez's interests by demanding $150,000. In addition, we cannot say on this record that Sturdevant had any reason to believe that he would be able to obtain a greater amount for Ramirez if he negotiated for lump-sum settlement. It is more than possible that Del Monte never would have agreed to pay Ramirez more than $150,000 and that it only agreed to the settlement in question because it was convinced that it would have to pay Sturdevant an even greater amount in attorney fees if the case went to trial. We have concluded only that the issue of whether Ramirez's interests were protected should be determined, that it has not been determined, and that the trial court is the better forum for that determination.

The judgment is reversed and the matter remanded to the superior court for proceedings consistent with our opinion. Each side shall bear its own costs on appeal.

Strankman, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied February 28, 1994, and appellant's petition for review by the Supreme Court was denied April 21, 1994.