NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 6, 2019
Decided January 14, 2020

Before

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1107

| | |
|---|---|
| VICTORIA L. ANDERSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | |
| GIBBS LAW GROUP LLP AND DANKO MEREDITH, P.C., *Appellees*, | No. 3:10-cv-12145 |
| *v.* | David R. Herndon, *Judge*. |
| BAYER HEALTHCARE PHARMACEUTICALS INC., *et al.*, *Defendants*. | |

**O R D E R**

Anderson sued Bayer HealthCare Pharmaceuticals and Bayer Pharma AG in 2010 for injuries caused by the Yasmin birth control pill. At the time, Anderson

was represented by Girard Gibbs and Danko Meredith, to whom we will refer collectively as "Gibbs." Anderson and Gibbs entered into a contingency fee agreement that required Anderson to pay Gibbs 40% of her final recovery. Gibbs represented Anderson for almost four years and helped negotiate a settlement offer of $176,451.72. Although Anderson was initially willing to accept this offer, Bayer withdrew it when Anderson failed to return an unaltered release form. Gibbs continued to serve as Anderson's counsel after this, but their relationship deteriorated as Anderson became increasingly difficult to represent.

In May 2014, Gibbs determined that its relationship with Anderson was beyond repair, so it notified Anderson that it planned both to seek permission from the district court to withdraw as counsel and to file an attorney's lien against any future settlement. Anderson quickly hired new counsel, Seithel Law (in association with Sugarman Law and Lopez McHugh) and informed Gibbs that she was terminating the attorney-client relationship for cause. Gibbs filed a motion to discharge, which was granted by the district court on May 21, 2014.

Four years later, Anderson accepted a new settlement offer of $210,000. Bayer paid that money into a "Qualified Settlement Fund" escrow account that could not be distributed until all liens, including attorney's liens, were resolved. Anderson, Gibbs, and Seithel filed submissions with the district court, seeking resolution of the fee dispute.

In July 2018, the district court issued an order allocating the attorney's fees according to California law, which governs Anderson's contract with Gibbs. The court awarded Gibbs the full amount of its contingency fee (40%) on the first settlement offer ($176,451.72). This amounted to $70,580.69 in attorney's fees for Gibbs.[1] The district court awarded Seithel its contingency fee (33.33%) based on the difference between the ultimate settlement amount and the first settlement offer ($33,548.28), reasoning that this was the value that Seithel had added. That amounted to $11,171.57 in attorney's fees for Seithel.

After the district court ordered the distribution of the fees and entered judgment in the civil case against Bayer, Anderson, proceeding pro se, filed a

---

[1] The district court committed a mathematical error in this order by inadvertently distributing more money than was available. Although the final settlement amount was $210,000, only $197,400 was available for distribution. The court dealt with the shortfall by later amending the order to reduce Gibbs's final attorney's fees to $62,180.69. But because the court conducted its analysis using the original numbers, we use the original numbers in describing its analysis.

motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure, challenging the district court's distribution of attorney's fees. The district court denied the motion, entered final judgment in the case, and this appeal followed.

We begin with a word about the district court's jurisdiction. In her brief, Anderson argued that the district court lacked jurisdiction over the fee dispute because under California law, "the attorney is neither a party nor an intervenor in the action … [so] the trial court remains without jurisdiction to assess the validity of the attorney's lien …." *Carroll v. Interstate Brands Corp.*, 121 Cal. Rptr. 2d 532, 538 (Ct. App. 2002). During oral argument, though, Anderson conceded that the district court had jurisdiction. That was a wise concession. Federal law, not state law, governs the subject matter jurisdiction of the federal courts. And in this case, federal law granted the district court diversity jurisdiction over Anderson's suit against Bayer, *see* 28 U.S.C. § 1332, and supplemental jurisdiction over the fee dispute, *see* 28 U.S.C. § 1367. *See also Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013) ("District courts may exercise supplemental jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the district court."). There is no question that the court had authority to enter the order distributing fees from the settlement fund.

As for the merits, Anderson makes three basic arguments. She first complains that the district court failed to evaluate her contingency fee agreement with Gibbs to determine whether it entitles Gibbs to assert an attorney's lien. "In California, an attorney's lien is created only by contract—either by an express provision in the attorney fee contract … or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered." *Carroll*, 121 Cal. Rptr. 2d at 534 (citations omitted). Anderson doesn't contend that Gibbs lacks a lien under the contract. But she insists that the district court had to review the contract before reaching that conclusion.

Even if the district court skipped a step, and even if Anderson could show prejudice from the error, Anderson forfeited this argument. Gibbs and others had filed attorney's liens against the settlement funds, and the whole point of the pre-order submissions to the court was to litigate the validity of these liens and the amount to which each attorney with a valid lien was entitled. Yet in her submission to the court in the fee dispute, Anderson did not contest the validity of Gibbs's asserted lien under her retainer agreement with the firm. Nor did she

raise this point in her reply brief in the fee dispute. She raised it for the first time in her Rule 60(b) motion. That was too late. *See Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (holding that a Rule 60(b) motion is an inappropriate forum for "arguments that should have been made earlier"). Because Anderson did not give the district court an opportunity to consider this argument, we will not consider it either. *See Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) ("[A] party may not raise an issue for the first time on appeal." (citation omitted)).

Anderson's second argument is that the district court erroneously concluded that she, rather than Gibbs, terminated the attorney-client relationship. That matters because under California law, an attorney who withdraws without cause from a contingency fee matter forfeits recovery for any services performed. *Hensel v. Cohen*, 202 Cal. Rptr. 85, 88 (Ct. App. 1984) (holding that an attorney who withdraws from a contingency-fee-based representation without justifiable cause is not entitled to fees). Anderson insists that Gibbs did just that: it withdrew without cause, thereby relinquishing any right that it had to payment for the work that it had done.

As Anderson sees it, the relationship did not end when she discharged Gibbs for cause on May 6, 2014—it ended 5 days earlier, when Gibbs notified her that it intended to withdraw. That is so, Anderson argues, because an attorney's notice of withdrawal terminates the relationship as a matter of California law. As support for this proposition, Anderson relies primarily on *Donnelly v. Ayer*, in which the court held that notice from an attorney terminated the attorney-client relationship when the retainer agreement provided that notice was enough to end it. 228 Cal. Rptr. 764, 767 (Ct. App. 1986). Anderson says that her contingency fee agreement with Gibbs was similar to the one at issue in *Donnelly* because it allowed Gibbs to withdraw from representation "at any time, upon giving reasonable notice." According to Anderson, *Donnelly* therefore dictates the conclusion that Gibbs terminated the attorney-client relationship on May 1.

Unfortunately, Anderson has forfeited this argument too. Like her first argument, this one did not appear until her Rule 60(b) motion—and as we have already explained, that was too late. We note, though, that this argument would almost surely fail even if she had preserved it. Anderson grounds her position in a selective citation of her contingency fee agreement with Gibbs. The full provision states that "[a]ttorneys may withdraw, at any time, upon giving reasonable notice *and a full explanation to Client* …." (emphasis added). Anderson never mentions the latter part of the provision, much less argues that Gibbs's notice on May 1 contained the required explanation. To take advantage of the

supposed *Donnelly* rule (and we express no view about whether Anderson correctly interprets that case), Anderson at least has to show that Gibbs terminated the relationship in accordance with the contract. Her argument on that score is patently incomplete.

Finally, Anderson argues that the district court misapplied California law in its calculation of the attorney's fees. Anderson presented her own theory to the district court, so this is an issue that she preserved. Her argument still fails, though, because the district court's fee order is consistent with California law.

Under California law, a discharged attorney is entitled to "quantum meruit recovery for the reasonable value of his services." *Fracasse v. Brent*, 494 P.2d 9, 10 (Cal. 1972). An attorney's quantum meruit recovery can often be calculated primarily by multiplying a reasonable hourly rate by the number of hours reasonably spent. *Cazares v. Saenz*, 256 Cal. Rptr. 209, 214 (Ct. App. 1989). But when the client agreed to pay her former attorney on a contingent basis, the calculation is more complicated. A contingency fee includes compensation for factors beyond the work performed: the risk that the plaintiff will recover nothing; the risk that the lawyer's share of the recovery will be less than the value of the work performed; and the cost of delaying payment until the conclusion of the case, which may be many years in coming. *Id.* Under California law, a court calculating a reasonable attorney's fee in a quantum meruit action must account for these factors too. *Id.* That might be a daunting task in the abstract, but "when an attorney partially performs on a contingency fee contract, we already have the parties' agreement as to what was a reasonable fee for the entire case." *Id.* The trick lies in determining what portion of the contract was performed. If the court can do that, "calculating the reasonable value of that partial performance becomes a relatively simple procedure." *Id.* at 215.

Here, the court valued the relative contributions of Anderson's attorneys by determining which portion of her recovery was attributable to each; it then calculated the fees due to each based on their respective agreements with Anderson. Gibbs thus received 40% of its portion, and Seithel received 33.33% of its portion. This was an eminently reasonable way of accomplishing what California law requires: ensuring that each attorney is paid "the reasonable value of his services." *Fracasse*, 494 P.2d at 10.

Anderson objects, however, to the district court's methodology. She maintains that California law required the court to cap the recovery for all lawyers at 33.33%, the amount that Seithel, her lawyer at the time of the

settlement, would have been due when the settlement was reached. Then, she says, the court had to divide that pot of money between Gibbs and Seithel. That would reduce her bill to $65,800, which is 33.33% of $197,400. As it stands, she must pay $73,352.26 of her settlement to the lawyers—$62,180.69 to Gibbs and $11,171.57 to Seithel.

While it would save Anderson money, using the most recently negotiated rate as a flat cap on the funds available to pay all the lawyers is inconsistent with California law, which focuses on reasonably valuing the services provided by each lawyer. Anderson's proposed cap is unconnected to any assessment of the value of the services that her former lawyers performed. To see that point starkly, consider what Anderson's rule would require: if Seithel's agreement had provided for a 10% contingency fee, then *all* of the attorneys would need to share less than $20,000 in fees, no matter how much work they had performed earlier in the lifetime of the suit. California law does not require such an arbitrary and inequitable result. *Cf. Fracasse*, 494 P.2d at 14 (explaining that if the "discharge occurs 'on the courthouse steps,' where the client executes a settlement obtained after much work by the attorney, the factors involved in a determination of reasonableness would certainly justify a finding that the entire fee was the reasonable value of the attorney's services"). The quantum meruit fee turns on the work performed for the client, not the happenstance of what contract—if any—happens to be in place when the suit comes to an end.

At least two California cases address the problem of dividing up one contingency fee among current and former lawyers. But contrary to Anderson's argument, neither comes anywhere close to holding that such payments must come out of a pot established by one contingency fee.[2] In *Cazares*, a lawyer who had a contingency fee agreement with a client sought the assistance of another lawyer in return for a cut of the fee. When a fee dispute erupted between the lawyers, there was necessarily only one contingency fee to divide. *Cazares*, 256 Cal. Rptr. at 210–11. In *Spires v. American Bus Lines*, 204 Cal. Rptr. 531, 531–32 (Ct. App. 1984), the client entered into a contingency agreement with her first lawyer, whom she subsequently discharged. The second lawyer, who represented her at the time of settlement, had no formal agreement with her, much less a contingency fee agreement. After the case settled, the first and second lawyers

---

[2] Anderson also cites several unpublished state cases that may not even be cited in, much less relied on by, California courts, as well as three opinions from federal district courts in California. We don't discuss these cases because they aren't binding, but none support Anderson's argument in any event.

each sought quantum meruit payment on an hourly basis. *Id.* As in *Cazares*, there was only one contingency fee contract in place; the court reasonably used it to cap the fees, requiring the current and former lawyers to be paid proportionally from that pot. *Id.* at 533–34.

Whatever these cases may require when there is only one contingency fee agreement, they do not dictate the application of the arbitrary, last-in-time fee cap that Anderson proposes when there is more than one contingency fee agreement. The district court's task under California law was to reasonably value the services provided by each of Anderson's attorneys. Its methodology accomplished that end, and its order is AFFIRMED.